**In re McLEAN SQUARE ASSOCIATES, G.P., Debtor.**

**Bankruptcy No. 93–14161–AB.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Oct. 15, 1996.

Denise A.G. Erickson, Office of the U.S. Trustee, Alexandria, VA, for United States Trustee.

Ann E. Schmitt, Reed Smith Shaw & McClay, Washington, DC, for McLean Square Associates, G.P.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Chief Judge.

Currently before the Court is a dispute between the United States Trustee and the debtor, McLean Square Associates, G.P., as to the interpretation of 28 U.S.C. § 1930(a)(6), as amended by § 211 of the Balanced Budget Downpayment Act, I, Pub.L. No. 104–99, 110 Stat. 26, 37–38 (1996) (the "amendment"). This matter arises before the Court on the debtor's objection to the United States Trustee's request for payment of additional quarterly fees. The United States Trustee demands that the debtor pay additional quarterly fees in accordance with the amended statute from the effective date of the amendment until entry of the final decree closing the case. The debtor objects on the grounds that requiring it to pay post-confirmation quarterly fees would be an improper, retroactive application of the amendment. The narrow issue before the Court is whether the 1996 amendment to § 1930(a)(6) requires the debtor to pay additional quarterly fees to the United States Trustee where its plan was confirmed prior to the enactment of the amendment.

After considering the parties' arguments and reviewing the legislative history and the recent case law on the issue, we find that the amendment to 28 U.S.C. § 1930(a)(6) requires the debtor to pay quarterly fees from the effective date of the amendment, January 27, 1996, through the date of entry of the final decree closing the case.

## I. FACTUAL BACKGROUND.

On October 6, 1993, Mclean Square Associates, G.P. ("debtor") filed a voluntary petition for relief under Chapter 11 of the Code: After three years of complex litigation and subsequent settlement negotiations, this Court entered an order confirming the debtor's First Amended Plan of Reorganization (the "plan") on July 17, 1995.[1]

On February 14, 1996, the U.S. Trustee brought a motion to show cause why a final

---

1. Two creditors of the debtor appealed the order confirming the plan. On December 1, 1995, the United States District Court dismissed the appeals on mootness grounds. One creditor appealed the dismissal to the Fourth Circuit Court of Appeals. As of the date of this opinion, the Fourth Circuit has not rendered a decision.

decree closing the debtor's case should not be entered, or, in the alternative, why this case should not be dismissed or converted to Chapter 7. The U.S. Trustee's motion prompted the debtor to file its Final Report and Motion for Final Decree on March 19, 1996. The matter came for hearing on March 26, 1996 at which time the U.S. Trustee asserted that under the 1996 amendment to 28 U.S.C. § 1930(a)(6), the debtor was responsible for additional quarterly fees until entry of the final decree. On May 9, 1996, the debtor filed its objection to the payment of the requested post-confirmation quarterly fees. The matter was set for hearing on July 23, 1996.

At the July 23rd hearing, the parties argued the issue of payment of post-confirmation quarterly fees under the amendment. Following that hearing, we entered the final decree closing the case specifically excepting any matters currently pending before the Court and took the issue regarding payment of additional quarterly fees under advisement.

## II. *DISCUSSION.*

### A.

On January 26, 1996, Congress passed the Balanced Budget Downpayment Act, I, Pub.L. No. 104–99, Title II, § 211, 110 Stat. 37 amending 28 U.S.C. § 1930(a)(6). Section 1930(a)(6) prescribes the fees payable to the Unites States Trustee, and provides in pertinent part:

> In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) *until the case is converted or dismissed,* whichever occurs first.

28 U.S.C. § 1930(a)(6) (1996) (emphasis added). The effective date of the amended statute is January 27, 1996.

The prior version of Section 1930(a)(6) provided, in pertinent part:

> In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) *until a plan is confirmed or* the case is converted or dismissed, whichever occurs first.

28 U.S.C. § 1930(a)(6) (1995) (emphasis added).

By deleting the phrase "a plan is confirmed or," the amendment now provides that a Chapter 11 debtor's obligation to pay quarterly fees no longer terminates upon confirmation, but continues until a case is converted or dismissed. Under the prior statute, once a plan was confirmed, no further fees were owed to the U.S. Trustee. The dispute before us now is the precise reach of the statute to pending Chapter 11 cases with confirmed plans in effect on the effective date of the amended statute. The U.S. Trustee contends that the amendment clearly requires that quarterly fees be paid in all cases pending on the effective date until a case is converted to Chapter 7, dismissed or closed upon entry of a final decree. The debtor counters that the amendment contains no clear statement that Congress intended the statute to apply to all Chapter 11 cases with confirmed plans on the effective date.

Nothing in either the text or the legislative history of the 1996 amendment states that Congress intended the amendment to be applied retroactively or prospectively. The legislative history of the amendment explains the types of cases to which the amendment applies. *See United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). A section of House Conference Report No. 104–378 (the "Conference Report") entitled "United States Trustee System Fund" states, in pertinent part:

> In addition, under section 111, the conferees agree to include an extension of post-confirmation quarterly fee payments made under Chapter 11 as proposed in both the House and Senate bills and expect that these fees will apply to *all pending Chapter 11 cases with confirmed reorganization plans.*

H.R.Conf.Rep. No. 378, 104th Cong., 1st Sess. 82 (1995); 141 Cong.Rec. H13894 (emphasis added).

The Conference Report also includes a section entitled "General Provisions—Depart-

ment of Justice," and under § 111, states as follows:

> The conference agreement includes section 111 as proposed in the House and Senate Bills, which extends the quarterly fee payments for debtors under Chapter 11 of the Bankruptcy Code to include the period from when a reorganization plan is confirmed by the Bankruptcy Court until the case is converted or dismissed. *The conferees intend that this fee will apply to both pending and new cases.*

H.R.Conf.Rep. No. 378, 104th Cong., 1st Sess. (1995); 141 Cong.Rec. H13899 (emphasis added).

■ The Conference Report makes it clear that Congress intended the amendment to apply to all Chapter 11 cases including those with confirmed reorganization plans pending at the time of the enactment of the amended statute. *In re Foxcroft Square,* 198 B.R. 99, 103 (Bankr.E.D.Pa.1996); *In re Upton Printing,* 197 B.R. 616, 618 (Bankr. E.D.La.1996); *but see Precision Autocraft, Inc.,* 197 B.R. 901, 905 (Bankr.W.D.Wash. 1996); *In re Hudson Oil Company, Inc.,* 200 B.R. 52, 55 (Bankr.D.Kan.1996). Here, the debtor's plan of reorganization was confirmed on July 17, 1995 and the case remained open until entry of the final decree closing the case on July 23, 1996. We conclude that Congress intended the amendment to apply to the debtor in this case.

### B.

■ Next, we turn to the question of whether application of the amendment to the debtor has a retroactive effect. The debtor argues that requiring it to pay post-confirmation quarterly fees amounts to improper, retroactive application of the amended statute. The U.S. Trustee, on the other hand, asserts that any retroactivity problems are resolved by its position that additional fees may only be sought for the period following the statute's enactment. Notwithstanding the U.S. Trustee's position, the debtor maintains that limiting the payment additional fees from the effective date forward still has retroactive effect. The debtor urges that the amendment imposes a new duty and burden on it

and modifies the rights of creditors and the debtor under the confirmed plan.

Under the principles annunciated by the Supreme Court in *Landgraf v. USI Film Products,* the U.S. Trustee's position is correct. The *Landgraf* court held:

> A statute does not operate "retrospectively" merely because it is applied in a case arising from conduct antedating the statute's enactment, [citation omitted], or upsets expectations based in prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment.

*Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 1499, 128 L.Ed.2d 229 (1994); *see also McAndrews v. Fleet Bank of Massachusetts,* 989 F.2d 13, 16 (1st Cir.1993) ("whether a statute's application in a particular situation is prospective or retroactive depends upon whether the conduct that allegedly triggers the statute's application occurs before or after the law's effective date.")

At least three bankruptcy courts addressing this issue have found that the amended statute is not retroactive as applied to debtors whose plans were confirmed prior to the effective date because the new fees apply only for the period after the effective date. *See In re Foxcroft,* 198 B.R. at 105 ("[T]he Law only affects the payment of fees after its enactment. It therefore only affects the propriety of prospective relief and is not retroactive."); *In re Upton Printing,* 197 B.R. at 620 ("[T]he amended statute does not appear to be retroactive as applied because the new fees apply only for the period after the effective date of the statute, and therefore it does not attach legal consequences to events completed before its enactment."); *see also In re Central Florida Elec., Inc.,* 197 B.R. 380 (Bankr.M.D.Fla.1996) (concluding that amended statute is not "necessarily retroactive" given the Trustee's request for fees only from the effective date to the entry of the final decree).

The debtor relies on the contrary decision in *Precision Autocraft.* In applying the *Landgraf* principles, the *Precision Autocraft* court determined that the amendment has retroactive effect because it imposes a "new

duty with respect to a completed transaction." 197 B.R. 901, 906 (Bankr.W.D.Wash. 1996); *see also In re Hudson Oil Co., Inc.,* 200 B.R. 52 (Bankr.D.Kan.1996). In determining that confirmation is a "completed transaction," the *Precision Autocraft* court stated:

> An order of confirmation is a final, appealable order of the Court, binding on the debtors and all parties in interest, and is *res judicata* as to all matters relating to the plan. 11 U.S.C. § 1141(a).
>
> .    .    .    .    .
>
> In the cases before us, the confirmed plans effect an adjudication of the parties' rights under the plans. The orders confirming the Debtor's plans are not interlocutory orders or events, defining the legal status of the reorganized Debtors and nothing more. Confirmation is the point after which no modification to a plan can be made absent appeal or compliance with Section 1127. It is the point at which new duties may not be imposed on the debtor, as debtor, absent the clear direction of Congress.

197 B.R. at 906.

We disagree with the analysis in *Precision Autocraft.* We cannot find that requiring the debtor to pay additional quarterly fees amounts to modification of the plan. The requirement to pay quarterly fees to the U.S. Trustee is not triggered by confirmation of the plan, but rather is an administrative expense attendant to an open case. In this case, the debtor's plan requires it to pay all allowed administrative expenses post-confirmation which were not paid as of the effective date of the plan. The debtor's plan estimated that as of the effective date its administrative expenses were $195,000. Nevertheless, to date, the debtor has paid over $350,000 in professional fees and costs. Requiring the debtor to pay additional professional fees post confirmation does not amount to modification of the plan. Likewise, requiring the debtor to pay additional quarterly fees does not modify the plan. Consequently, we reject the conclusion that the amendment imposes a "new duty with respect to a completed transaction."

Thus, under the principles annunciated in *Landgraf,* we agree with those courts finding that the U.S. Trustee's position does not have retroactive effect on debtors with confirmed plans on the effective date. Furthermore, even if the amendment operated retroactively, the Supreme Court has given Congress broad latitude in applying statutes retroactively. Retroactive legislation affecting economic rights is permissible if it is justified by a rational legislative purpose. *United States v. Carlton,* 512 U.S. 26, 114 S.Ct. 2018, 129 L.Ed.2d 22 (1994). Where such justification exists, judgments about the wisdom of such legislation remains within the province of the legislative and executive branches. *Id.; see also In re Central Florida,* 197 B.R. at 381; *In re Upton Printing,* 197 B.R. at 620.

The change in the U.S. Trustee fee structure requiring fees to be paid in Chapter 11 cases after confirmation of a plan is a legitimate legislative purpose supported by a rational means. The statute was amended as part of the Balanced Budget Downpayment Act as a means to collect additional funds to support the self-funded administration of bankruptcy cases. *In re Upton Printing,* 197 B.R. at 620. The purpose of the changes in the fee structure imposed by the Act was to assist in balancing the federal budget. As the *Foxcroft* court observed:

> The United States Trustee program is part of the Department of Justice ("the DOJ"). The purpose of the Act was to assist in balancing the federal budget, particularly that aspect funding the DOJ. Congress's goal was, then, trying to raise additional funds for the DOJ in balancing the budget. It is clear that interpreting the Law to allow debtors whose plans were confirmed prior to the amendment serves this revenue-gathering purpose.

198 B.R. at 103.

Finally, the debtor suggests that requiring it to pay additional fees is somehow inequitable. Under the debtor's plan, all creditors are being paid in full. In fact, to date, all creditors have been paid in full with the exception of Lennar Metro D.C. Partners, L.P. which is being paid the full amount

442

of its claim in the amount of $6,917,166 plus interest over a six and a half year period. Although the exact amount of additional fees required in this case has not been determined, the debtor estimates that fees based on distributions from January 27, 1996 forward could exceed $25,000. At this point, we estimate, without deciding, that the additional fees should not exceed $15,000 based on the fee schedule in § 1930(a)(6).[2] In any event, the additional fees required under the amendment will have little, if any, impact on either the debtor's ability to make all distributions under its plan or its ability to reorganize.

## C.

Having determined that the amendment applies to all pending Chapter 11 cases, we address the question of when the obligation of the debtor to pay quarterly fees terminates. To make this determination, we must first look to the language of the statute. *In re JKJ Chevrolet, Inc.*, 26 F.3d 481 (4th Cir.1994); *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). If the language of the statute is unambiguous and there is no clear Congressional intent to the contrary, the language is conclusive. *In re JKJ Chevrolet*, 26 F.3d at 483. Our inquiry must cease if the statutory language is unambiguous and " 'the statutory scheme is coherent and consistent.' " *United States v. Murphy*, 35 F.3d 143, 145 (4th Cir.1994), *cert. denied*, ── U.S. ──, 115 S.Ct. 954, 130 L.Ed.2d 897 (1995) (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240–41, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989)). In other words, if the statutory language " 'is plain and admits no more than one meaning, the duty of interpretation does not arise, and the rules which are to aid doubtful meanings need no discussion.' " *Id.*

There are, however, rare and narrow circumstances permitting courts to look beyond the plain meaning of unambigu-

ous statutes. *Id.* One such circumstance arises if literal application of the statutory language would produce a result demonstrably at odds with the intent of Congress; in such cases, the intent of Congress rather than the strict language controls. *See Ron Pair Enters., Inc.*, 489 U.S. at 242, 109 S.Ct. at 1031 ("The plain meaning of legislation should be conclusive, except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of the drafters, rather than the strict language controls."). In such cases, we examine the statute according to conventional rules of statutory construction: we must construe the statute in the context of the entire statutory scheme and avoid rendering statutory provisions ambiguous, extraneous, or redundant; we favor the more reasonable result; and we avoid construing statutes contrary to the clear intent of the statutory scheme. *See, e.g., Stiltner v. Beretta U.S.A. Corp.*, 74 F.3d 1473 (4th Cir.1996); *Trustees of Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. Leaseway Transp. Corp.*, 76 F.3d 824, 828 (7th Cir.1996).

Mindful of these conventional rules of statutory construction, we turn to the statute at hand. Here the plain language of the amendment requires that a Chapter 11 debtor pay quarterly fees until the case is converted or dismissed. According to the debtor, only debtors whose cases are converted or dismissed are obligated to pay quarterly fees. In other words, the debtor asserts that the amendment now imposes quarterly fees only in cases that do not successfully reorganize. This conclusion is not consistent with the overall statutory scheme.

We agree that the plain language of the statute is clear. The amendment requires quarterly fees be paid until a case is converted or dismissed. A case may be converted or dismissed at any time before or after a plan is confirmed up until the moment the court enters the final decree closing the case. At that time, conversion or dismissal is no

---

**2.** The maximum fee required under § 1930(a)(6) is $5,000 for each quarter in which disbursements total $3,000,000 or more. There were approximately three quarters from the effective date, January 27, 1996 through entry of the final decree on July 23, 1996. Hence, the fee should be approximately $15,000 in this case.

longer possible. The logical conclusion is that when a case is closed, the obligation to pay quarterly fees terminates because the possibility of conversion or dismissal no longer exists. There is no ambiguity here, Congress simply did not state the obvious. A literal application of the statutory language, as suggested by the debtor, produces a result contrary to congressional intent and ignores the entire statutory scheme and purpose of the Balanced Budget Downpayment Act.

Two courts to address this issue reached a contrary conclusion. In *C n' B of Florida*, the court concluded that the requirement to pay quarterly fees post-confirmation applies only in aborted Chapter 11 cases, when the case is either dismissed or converted, and does not apply in successful and substantially consummated Chapter 11 cases. 198 B.R. 836 (Bankr.M.D.Fla.1996); *see also In re Northwestern Trading Co., Inc.*, Case No. 93–00029 (not generally reported), Order entered on May 1, 1996. The *C n' B* court relied on *In re Northwestern Trading*, an unreported decision from the Bankruptcy Court for the District of Puerto Rico, and expressly rejected the U.S. Trustee's proposition that the quarterly fee must be paid as long as the case is pending. Rather, the *C n' B* court held that both the plain language of the amendment and the legislative history support the interpretation that Congress intended the fees to be paid only in an aborted Chapter 11 case where the debtor was unable to consummate a confirmed plan and the confirmed Chapter 11 is either dismissed or converted pursuant to § 1112(b)(6), (7), (8) or (10). *Id.* at 838. The *C n' B* court rejected the holdings in *Central Florida, Upton Printing* and *Foxcroft* on the basis that by merely focusing on the legislative history which states that the amendment applies to all pending cases, those courts failed to sufficiently answer the question for how long.

We find no support for the *C n' B* and *Northwestern Trading* courts' interpretation of the amendment in the language, in the legislative history or in public policy. Congress has chosen to impose quarterly fees on Chapter 11 debtors in cases which remain open. We note that requiring Chapter 11 debtors to pay quarterly fees post-confirma-

tion in all cases is well justified by the U.S. Trustee's obligation to continue to monitor the administration and progress of a case post-confirmation. *See* 28 U.S.C. § 586(a)(3). Following confirmation, the U.S. Trustee monitors the progress of cases to ensure that final reports are filed and that the case is closed by the court. Further, the U.S. Trustee continues to monitor applications for compensation and reimbursement under section 330 of title 11. *See generally,* 28 U.S.C. § 586(a)(3)(A), (D) & (G). The U.S. Trustee receives a specific fee each quarter which is fixed by statute and varies according to the amount of money disbursed in a case regardless of the complexity of the case or the amount of work required.

**D.**

In addition to the reasons stated above, we also note the additional policy consideration at issue here, i.e., the expeditious completion of post-confirmation administration of Chapter 11 cases in order that they can be closed. As the *Foxcroft* court observed:

> The incidence of post-confirmation fees, when the administration of a case lags in its post-confirmation stages, is a powerful incentive for debtors to complete administration of cases in this court and then depart from our protective jurisdiction. Expedition of post-confirmation administration will benefit creditors anxiously awaiting full distribution in most cases. Imposition of what is effectively a modest user fee upon dilatory debtors is therefore quite easily justified.
>
> This policy should be furthered with respect to cases filed and in which plans were confirmed before enactment of the Law, as well as those filed or confirmed thereafter. The instant cases are cases in point. We welcome laws which encourage Chapter 11 debtors to come to the court to effect their plans or reorganization, but litigate issues which arise post-confirmation in non-bankruptcy forums.

*Foxcroft,* 198 B.R. at 105. With filings at record highs in 1996 in this District and nationwide, Judge Scholl's observation is well taken. The case before this Court is a case

in point as well. The debtor was brought before the Court on the U.S. Trustee's motion for rule to show cause why a final decree should not be entered—a routine motion brought by the U.S. Trustee when Chapter 11 cases remain open six months after confirmation of the plan. The imposition of quarterly fees post-confirmation will no doubt prompt debtors to diligently file their final reports and get their cases closed.

## III. *CONCLUSION.*

Accordingly, the debtor's objection to the payment of additional quarterly fees is overruled. The amendment to 28 U.S.C. § 1930(a)(6) applies to the debtor from January 27, 1996, the effective date, until entry of the final decree on July 23, 1996. The U.S. Trustee shall access quarterly fees against the debtor pursuant to the fee schedule contained in § 1930(a)(6) in accordance with this opinion.

The Court will enter an appropriate order.