In re SEDRO–WOOLLEY LUMBER CO., INC., WTD Industries, Inc., Treesource Inc., et al., Debtors.

Bankruptcy Nos. 91–00707 through 91–00721, 91–00736 through 91–00741, 91–00752 through 91–00756, 91–00773 through 97–00778, and 91–01140 through 91–01149.

United States Bankruptcy Court, W.D. Washington.

July 1, 1997.

---

Gail Geiger, Seattle, WA, for Office of United States Trustee.

Kurt Becker, Perkins Coie, Seattle, WA, for debtors.

## MEMORANDUM OPINION

SAMUEL J. STEINER, Bankruptcy Judge.

This matter is before the Court on remand from the District Court to determine the amount of postconfirmation fees owed by the debtors to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6). The Court has already rendered its oral ruling, and the appropriate orders have been entered. At the request of the United States Trustee, the Court has agreed to publish those portions of its ruling which pertain to the statute,

The issues discussed in this opinion are:

1) Does the term "disbursements" include all disbursements made by the debtors post-confirmation, or is it limited to disbursements made under the confirmed plan of reorganization?

2) Does the debtors' obligation to pay the quarterly fee continue until the cases are closed, or does it terminate on the occurrence of an earlier event, such as substantial consummation?

## I. MEANING OF "DISBURSEMENTS"

28 U.S.C. § 1930(a)(6) provides for a quarterly fee to be paid to the United States Trustee in each pending Chapter 11 case. Originally the fee was payable only until confirmation. By amendment effective January 27, 1996, the fee was extended past confirmation, until the case is converted or dismissed. The statute was amended again effective September 30, 1996, to clarify that the fee is owed in all cases that had confirmed plans on January 27, 1996, and to raise the fee. The amount of the quarterly fee is based on a sliding scale according to disbursements made. The rate effective in these cases ranges from $250 for each quarter in which disbursements are $15,000 or less, and reaches $5,000 for disbursements of $3,000,000 or more.

Neither the statute nor the legislative history defines the term "disbursements". The United States Trustee wants the Court to interpret the term broadly to include all disbursements made by the reorganized debtors. The debtors urge a narrower interpretation that would include only those payments made pursuant to the confirmed plan.

There are no circuit court decisions directly on point. Bankruptcy courts have come down on both sides of the issue, all relying heavily on *St. Angelo v. Victoria Farms, Inc.*, 38 F.3d 1525 (9th Cir.1994). *Victoria Farms* was decided before the 1996 amendments and thus addressed only preconfirmation fees. The Court there held that "a plain language reading of the statute shows that Congress clearly intended 'disbursements' to include *all payments from the bankruptcy estate.*" *Id.* at 1534 (emphasis added)

Those Courts which have adopted a narrow definition of the term have attributed substantive meaning to the phrase, "from the bankruptcy estate," and have therefor concluded that the term "disbursements" includes only payments made from the estate. *In re SeaEscape Cruises, Ltd.*, 201 B.R. 321 (Bankr.S.D.Fla.1996); *In re Boulders on the River*, 205 B.R. 948 (Bankr.D.Or.1997). Noting that property of the estate revests in the debtor upon confirmation pursuant to Sec. 1141(b), these courts conclude that there is

no estate from which to make payments after confirmation.

This conclusion has in turn lead to one of two results. Three courts, all from the Southern District of Florida, have held that the fee must be based on payments made pursuant to the plan. *In re Betwell Oil and Gas Co.*, 204 B.R. 817 (Bankr.S.D.Fla.1997); *In re SeaEscape Cruises, Ltd.*, 201 B.R. 321, 323 (Bankr.S.D.Fla.1996); *In re Jamko, Inc.*, 207 B.R. 758 (Bankr.S.D.Fla.1996). In *In re Boulders on the River*, 205 B.R. 948 (Bankr. D.Or.1997) and *In re Maruko, Inc.*, 206 B.R. 225 (Bankr.S.D.Ca.1997), courts from Oregon and California took the argument one step further. They rejected the notion that the fees should be based on plan payments, because plan payments are not made with estate property but rather from the reorganized debtor's property or future income. There being no disbursements of estate property post-confirmation, the reorganized debtor can only be assessed the minimum fee. The *Maruko* Court supported its conclusion by noting that Congress had before it the *Victoria Farms* definition of "disbursements" when it amended the statute in September of 1996, and chose not to correct it.

The only case to date which has adopted the United States Trustee's broad definition of "disbursements" *In re P.J. Keating*, 205 B.R. 663 (Bankr.D.Mass.1997). Citing *Victoria Farms*, the *Keating* Court concluded that all disbursements of the reorganized debtor are to be included in the calculation. The Court disregarded as dicta the language, "from the bankruptcy estate," since the source of payment was not an issue before the 1996 amendments. Further, the *Keating* Court found expressions of Congressional intent in the committee and conference reports, both of which discuss an "extension of the quarterly fee payments made under Chapter 11" to the period after confirmation. *Id.* at 665, quoting H.R.Conf.Rep. No. 104–378, at 188 (1995). From this language, the Court concluded that "Congress intended the amendment to extend to the postconfirmation period the same payment obligations previously imposed preconfirmation." *Id.*

This Court agrees with the *Keating* Court's conclusion that the "plain language" of the statute does not limit the source of disbursements to property of the estate, nor does it limit payments to those made under the plan. Clearly in *Victoria Farms*, the Ninth Circuit addressed the issue of preconfirmation fees alone and could not have known that the fee would later be extended to postconfirmation periods. To attribute substantive meaning to the phrase "of the estate" is to impute an intention to the Court which it simply could not have formed in the circumstances as they existed at the time. Finally, the narrower approach necessitates giving the term "disbursements" two different definitions within the same statute, and that defies a basic tenet of statutory construction.

This Court concludes that the postconfirmation fees due the United States Trustee should be calculated on the basis of all disbursements made by the reorganized debtors. In those cases where there have been no disbursements, the fee would be the minimum due under the schedule.

## II. TERMINATION OF PAYMENTS

■ 28 U.S.C. § 1930(a)(6) provides that the quarterly fee is payable until a case is converted or dismissed, whichever occurs first. The United States Trustee asserts that, in cases which are neither converted nor dismissed, the fee continues until a case is closed, although the statute does not so provide. The debtors suggest that the obligation terminates upon substantial consummation rather than closing. This was the conclusion reached in *In re Beechknoll Nursing Homes, Inc.*, 202 B.R. 260 (Bankr. S.D.Ohio 1996). There, the Court held that post-confirmation fees could not be collected in cases where a plan had been substantially consummated before the effective date of the January 27, 1996, amendment to Section 1930. In reaching its conclusion, the Court noted that the entry of a final decree is simply an administrative step, while from a substantive standpoint, the more significant point in time is when the case has been fully administered.

While the *Beechknoll* approach has some appeal, this Court concludes that there must be an identifiable point in time when the fee terminates automatically. To tie it to substantial consummation introduces a level of

uncertainty that is unworkable. Further, until a final decree is entered, the debtor is required by local rule to file postconfirmation reports. LBR 2015(c). Thus to the extent that the office of the United States Trustee reviews those reports, its resources continue to be taxed until closing.

In *In re Burk Development Company, Inc.*, 205 B.R. 778 (Bankr.M.D.La.1997), the Court rejected *Beechknoll* and concluded that the statute, by its terms, provides the answer to the dilemma as to when payments terminated.

> The Amendment plainly states that the requirement of the fee being paid is that it be paid "in each case under chapter 11 of title 11.... " The logical inference from the word "case" is that the fee be paid in a pending case, that is, "in each case [pending] under chapter 11 of title 11.... " Once a final decree is issued and the "case" is closed, there is no longer a "case" in which a fee can be paid—so the triggering event for terminating postconfirmation quarterly fees, if a case is not dismissed or converted, must be the order closing the case, after the issuance of a final decree.

*Id.* at 785.

This Court agrees with the reasoning of *Burk* and concludes that the requirement to pay the quarterly fees terminates when the case is closed.

## CONCLUSION

1. Postconfirmation fees due the United States Trustee should be calculated on the basis of all disbursements made by the reorganized debtors.

2. The statutory requirement to pay quarterly fees to the United States Trustee continues until the Chapter 11 cases are closed.