**In re MARUKO, INC., Debtor.**

**Bankruptcy No. 97–CV–1145–K.**

United States District Court,
S.D. California.

Feb. 24, 1998.

Mary Margaret Testerman, U.S. Department of Justice, United States Trustees, San Diego, CA, for plaintiff.

Arnold Marvin Quittner, Pachulski, Stang, Ziehl & Young, Joseph A. Eisenberg, Adrienne M. Coffin, Jeffer, Mangels, Butler & Marmaro, Los Angeles, CA, for Maruko, Inc.,

Theodore W. Graham, Jeffrey Garfinkle, Brobeck, Phleger & Harrison, San Diego, CA, for Anzai Atsuji.

## AMENDED ORDER REVERSING THE BANKRUPTCY COURT'S RULING AND REMANDING THE CASE FOR DETERMINATION OF THE AMOUNT OF QUARTERLY FEES OWED BY DEBTOR

KEEP, District Judge.

## I. BACKGROUND

Maruko, Inc. (hereinafter "Maruko" or "debtor") was a Japanese corporation headquartered in Tokyo. Maruko specialized in developing commercial properties worldwide, often entering into sale-leaseback agreements with Japanese investors. Maruko filed a chapter 11 petition on October 31, 1991, and an order for relief was entered on the same date. The confirmation hearing took place on November 29, 1993. The bankruptcy court entered its order confirming Maruko's plan of reorganization ("Plan") on February 2, 1994; said order became final on February 13, 1994. Maruko's Plan has been fully performed, but the case has not been dismissed or converted.

Prior to the confirmation of its Plan, Maruko paid the United States Trustee quarterly fees based upon its disbursements in the Chapter 11 proceeding as required under 28 U.S.C. § 1930(a)(6). This section provides for the payment by the filing party of quarterly fees based on the number of disbursements made. On January 26, 1996, Congress amended § 1930(a)(6) in § 211 of the Balanced Budget Downpayment Act, I, Pub.L. No. 104–99, 110 Stat. 26, 37–38 (1996) (hereinafter "the Amendment" or "Public Law 104–99"). Congress subsequently enacted Public Law No. 104–208 § 109(d) on September 30, 1996. The statute currently reads as follows:

> (a) Notwithstanding section 1915 of this title, the parties commencing a case under title 11 shall pay to the clerk of the district court or the clerk of the bankruptcy court, if one has been certified pursuant to section 156(b) of this title, the following filing fees: ... (6) In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) until the case is converted or dismissed, whichever occurs first....

The fees listed in this section are scaled according to the amount of the disbursement. Based on its interpretation of the amendment to § 1930(a)(6), the United States Trustee requested that Maruko pay the quarterly fees based upon its post-confirmation disbursements from and after January 26, 1996.[1]

---

1. Congress amended § 1930(a)(6) again in September 30, 1996, to clarify that the fee is owed in all cases that had confirmed plans on January 27, 1996, and to raise the fee. See General Provisions for the Department of Justice, § 109, Title I of the Omnibus Appropriations Act for Piscal Year 1997, Public Law No. 104–208, 110 Stat. 3009; see also In re Sedro–Woolley Lumber Co., Inc., 209 B.R. 987, 988 (Bankr.W.D.Wash. 1997).

On September 17, 1996, Maruko filed a motion for determination that the reorganized debtor has no obligation to pay the quarterly fees to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) as amended by Public Law 104–99. On October 31, 1996, the Official Committee of Creditors Holding Unsecured Claims ("OCC") and Certain Japanese Co–Owners/Creditors of Maruko ("Co–Owners") filed joinders to the reorganized debtor's motion. On March 12, 1997, the bankruptcy court filed its Memorandum Decision. The bankruptcy court noted that Maruko is required to pay post-confirmation quarterly fees based upon disbursements made from Maruko's bankruptcy estate. *See In re Maruko, Inc.*, 206 B.R. 225, 229 (Bankr.S.D.Cal.1997). The bankruptcy court determined that Maruko's bankruptcy estate ceased to exist after the confirmation. *Id.* at 230. Thus, the bankruptcy court determined that Maruko only needed to pay the minimum applicable statutory rate after the confirmation since its disbursements did not exceed $15,000. *See* § 1930(a)(6) ("The fee shall be $250 for each quarter in which the disbursements total less than $15,000."). The bankruptcy court entered an order ("bankruptcy order") in accordance with its Memorandum Decision on April 2, 1997.

The United States Trustee filed an Ex Parte Motion to Reconsider the bankruptcy court's decision. On April 16, 1997, the bankruptcy court entered an order denying the motion for reconsideration. Thereafter, the Trustee filed a timely Notice of Appeal. The appellee filed an opposition brief on October 16, 1997 ("Opposition"). On October 29, 1997, the appellant filed its reply brief ("Reply").

Pursuant to Federal Rule of Bankruptcy Procedure 8012(3), the court hereby waives oral argument given that the material facts in this case are not in dispute. The resolution of this appeal rests on a question of law, which the court may resolve on the basis of the briefs and supporting documents submitted.

## II. STANDARD OF REVIEW

The district courts of the United States have jurisdiction to hear appeals of final orders or decrees of the bankruptcy court pursuant to 28 U.S.C. § 158(a)(1). The district court reviews a bankruptcy court's findings of fact for clear error, and the court reviews its conclusions of law *de novo*. *See In re DAK Indus., Inc.*, 66 F.3d 1091, 1094 (9th Cir.1995). Questions of statutory construction are conclusions of law subject to *de novo* review. *See In re MacIntyre*, 74 F.3d 186, 187 (9th Cir.1996). In this case, the parties do not dispute the relevant facts; therefore, the court will analyze the bankruptcy court's interpretation of the law *de novo*.

## III. BANKRUPTCY COURT'S ORDER

The bankruptcy court framed the issue as follows: "What is Maruko's post-confirmation obligation to the U.S. trustee pursuant to 28 U.S.C. § 1930(a)(6)?" *Maruko*, 206 B.R. at 227. The bankruptcy court made two critical rulings in answering that question: 1) the application of § 1930(a)(6) does not change or modify the confirmation status of Maruko's Plan and accordingly, is not unconstitutional as asserted by the debtor; and 2) the term "disbursement" under this section is defined as "coming from the bankruptcy estate." Therefore, the bankruptcy court held that Maruko is not obligated to pay quarterly fees for disbursements made after the bankruptcy estate ceased to exist on February 13, 1994, the date the Plan confirmation became final. *Id.* at 230.

Consequently, the bankruptcy court ordered Maruko to pay the statutory minimum amount for the post-confirmation payments pursuant to § 1930(a)(6). This section holds that disbursements less than $15,000 are subject to a $250 quarterly fee. Since, according to the bankruptcy court, Maruko had no "disbursements" in the post-confirmation stage of its case, then Maruko was liable only for the $250 fee for disbursements less than $15,000. *See Maruko*, 206 B.R. at 230. The bankruptcy court, therefore, found that § 1930(a)(6) could be applied in the post-confirmation context without any constitutional violations; yet, it decided that post-confirmation payments could not be included in the calculation of the requisite quarterly fees. *Id.*

■ The Trustee appealed the second finding regarding the definition of "disbursements" under § 1930(a)(6); this is the issue for this court's review. Debtor, in its Opposition, attempts to resurrect the first issue decided by the bankruptcy court. However, the appellees failed to file a proper cross-appeal. *See* Bank. R. 8002(a) ("If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 10 days of the date on which the first notice of appeal was filed ...."). Instead, they attempt to reargue this issue in the context of their opposition to the U.S. Trustee's appeal. "The timely filing of a notice of cross-appeal is jurisdictional and cannot be waived." *In re Ranch Partners, Ltd.*, 146 B.R. 833, 837 (D.Colo.1992) (citing *Frymire v. Paine-Webber, Inc.*, 107 B.R. 506, 514 (E.D.Pa. 1989).) Therefore, the court properly refuses to entertain such arguments given that they are presented in an untimely and improper fashion. *Id.*

■ Alternatively, assuming that these issues are properly before the court, this court would concur with the Trustee's argument and the bankruptcy court's interpretation of the law. The bankruptcy court followed the ruling in *In re McLean Square Assoc.*, 201 B.R. 436 (Bankr.E.D.Va.1996), which held that requiring a debtor to pay a quarterly fee to the U.S. Trustee neither triggers nor modifies the reorganization plan. *Id.* at 441. Instead, the quarterly fee payment is an administrative expense passed to help fund the U.S. Trustee's office. *See Maruko*, 206 B.R. at 229. Hence, the debtor's confirmation status is unchanged by these fees, and the application of the quarterly fees is, therefore, constitutional. *See McLean*, 201 B.R. at 441.

■ With respect to the disbursement issue, the bankruptcy court relied heavily on the Ninth Circuit's ruling in *St. Angelo v. Victoria Farms, Inc.*, 38 F.3d 1525 (9th Cir. 1994), which was decided before the amendment to § 1930(a)(6). In *St. Angelo*, the court held that the term "disbursements" is not defined within § 1930(a)(6), in its legislative history, or in the case law. 38 F.3d at 1534. In that case, the Ninth Circuit decided that pre-confirmation payments to both secured and non-secured creditors are disbursements for the purposes of § 1930(a)(6). *Id.* at n. 10 ("Indeed, the sparse legislative history on this issue suggests that Congress intended to adopt an expansive definition of payments that included both secured and non-secured debts.") The Ninth Circuit further ruled that "a plain language reading of [ § 1930(a)(6)] shows that Congress clearly intended 'disbursements' to include *all* payments from the bankruptcy estate." *Id.* (emphasis in original).

The U.S. Trustee argued that the *St. Angelo* ruling did not limit disbursements solely to the bankruptcy context; instead, the ruling, which was issued before the amendment to § 1930(a)(6), provided an expanded interpretation of what property could be considered as part of the disbursement. Contrary to the expansive interpretation of the term "disbursement" in *St. Angelo*, the bankruptcy court ruled that the Ninth Circuit intended to define "disbursements" as only those payments made within the context of the bankruptcy estate. The bankruptcy court held that it was not clear that there was congressional intent to change the Ninth Circuit's definition when it passed the Amendment. Since Congress is charged with knowledge of the relevant caselaw when passing legislation, the bankruptcy court found that Congress did not intend to change the definition of disbursement to include those payments made when the bankruptcy estate ceases to exist. *See Maruko*, 206 B.R. at 229 (citing *Midlantic Nat'l Bank v. New Jersey Dept. of Environmental Protection*, 474 U.S. 494, 501, 106 S.Ct. 755, 759–60, 88 L.Ed.2d 859, *reh. denied*, 475 U.S. 1090, 106 S.Ct. 1482, 89 L.Ed.2d 736 (1986)). The bankruptcy court also relied on the ruling in *In re SeaEscape Cruises, Ltd.*, 201 B.R. 321, 323 (Bankr. S.D.Fla.1996) which held that "payments, distributions, or allocations made by a reorganized debtor after the plan's effective date, in the ordinary course of its business or otherwise, do not constitute 'disbursements' under Section 1930(a)(6) and cannot serve as a basis upon which the U.S. Trustee may calculate its fee." *Id.*

## IV. *RULING*

As noted, this case revolves around the definition of "disbursement" under § 1930(a)(6). The answer to this question will determine whether Maruko must make quarterly payments for the post-confirmation transactions undertaken. The U.S. Trustee outlined three options for the bankruptcy court during its oral argument which are instructive to the court's analysis of the legal issue in this case. *See* Transcript at 27. The court may choose among the following options: 1) uphold the bankruptcy court's interpretation of "disbursement" under § 1930(a)(6); 2) hold that all disbursements, both pre- and post-confirmation are subject to the quarterly fee requirements under that section; or 3) hold that only certain types of disbursements are subject to the quarterly fee.

The term "disbursement" is not defined in § 1930(a)(6) or in its legislative history. *See St. Angelo,* 38 F.3d at 1534. Aside from the purported definition of "disbursement" offered in *St. Angelo,* there are no circuit court decisions which define the term. As noted above, in *St. Angelo* the Ninth Circuit held that disbursements include pre-confirmation payments to both secured and non-secured creditors. 38 F.3d at 1534. In concluding that *"all* payments from the bankruptcy estate" may be used in the calculation of quarterly fees, the *St. Angelo* court supplied an expansive reading of the term "disbursement." *Id.* The Ninth Circuit held that the "sparse legislative history on this issue suggests that Congress intended to adopt an expansive definition of payments that included both secured and non-secured debts." *Id.* at 1534 n. 10. When the *St. Angelo* court made this decision, § 1930(a)(6) had not yet been amended to allow the application of quarterly fees to post-confirmation payments; hence, the Ninth Circuit decided this case within the context of payments under the bankruptcy estate and did not consider the issue of post-confirmation payments as "disbursements." *See In re Sedro–Woolley Lumber Co., Inc.,* 209 B.R. 987, 989 (Bankr.

W.D.Wash.1997) ("To attribute substantive meaning to the phrase 'of the estate' is to impute an intention to the Court which it simply could not have formed in the circumstances as they existed at the time."); *see also P.J. Keating,* 205 B.R. at 666–67. Instead, the term "disbursements" in *St. Angelo* is broad enough to include post-confirmation payments made pursuant to· § 1930(a)(6), as amended.[2] Therefore, the putative definition of "disbursement" in *St. Angelo,* as interpreted by the bankruptcy court, is inapposite·in this instance.

An expansive reading of the *St. Angelo* holding is buttressed by that court's reliance on similarly expansive bankruptcy rulings. For example, the `St. Angelo` court refers to *In re Ozark Beverage Company, Inc.,* 105 B.R. 510, 512 (Bankr.E.D.Mo.1989), for the proposition that Congress·intended to adopt an "expansive definition of payments." *St. Angelo,* 38 F.3d at 1534 n. 10. The *Ozark* court defined "disbursements" as "all expenses of a debtor-in-possession in a given quarter." 105 B.R. at 512. Hence, this court finds that the *St. Angelo* court does not limit the language and intent of Congress in amending § 1930(a)(6), but instead provides an expansive definition for "disbursement" that is not limited to the bankruptcy estate context.

Given that the description of disbursements in *St. Angelo,* as interpreted by the bankruptcy court, is inapplicable in this case, the court must look to the plain language reading of the statute to define the term. *See Smith v.· U.S.,* 508 U.S. 223, 228, 113 S.Ct. 2050, 2053–54, 124 L.Ed.2d 138 (1993) (holding that a word that is undefined in a statute must be given its ordinary meaning). Both parties have lodged cases with the court which provide different interpretations of this holding and which support their respective definitions of "disbursements." Some courts, along with the bankruptcy court, have held that the *St. Angelo* ruling defines and limits disbursements to those payments made "from the bankruptcy estate." *See, e.g., In re Boulders on the River, Inc.,* 205

---

**2.** The *Sedro–Woolley* court held that the Ninth Circuit in *St. Angelo* had simply "addressed the issue of preconfirmation of fees alone and could

not have known that the fee would later be extended to postconfirmation periods." *Sedro–Woolley,* 209 B.R. at 989.

B.R. 948, 951 (Bankr.D.Or.1997); *SeaEscape Cruises,* 201 B.R. at 323. These courts concluded that Congress was aware of this definition when it amended § 1930(a) and decided not to abrogate it. *See Maruko,* 206 B.R. at 229.

Other courts have held that by amending the statute, the Supreme Court intended to enhance revenues by charging quarterly fees for post-confirmation disbursements. *See, e.g., In re P.J. Keating Co.,* 205 B.R. 663, 667 (Bankr.D.Mass.1997). As a result, these courts have concluded that the Ninth Circuit in *St. Angelo* could not have intended to restrict disbursements only to payments from the bankruptcy estate; they argue that Congress had not passed the amendment to § 1930(a)(6) when the *St. Angelo* court made its ruling and that the Ninth Circuit provided an expansive definition for disbursements. *See Sedro–Woolley,* 209 B.R. at 989; *see also, P.J. Keating,* 205 B.R. at 665.

This court agrees with those courts which have read the Amendment to § 1930(a)(6) as a clear indication that Congress intended to extend the requirement of quarterly payments to post-confirmation distributions. The Amendment deleted the words "a plan is confirmed or" in the language of the statute:

> In addition to the filing fees paid to the clerk, a quarterly fee shall be paid to the United States trustee in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) until "*a plan is confirmed or* the case is converted or dismissed, whichever occurs first ...."

The plain effect of this deletion was to extend the payment of quarterly fees into the post-confirmation stage. *See McLean,* 201 B.R. at 442. The *McLean* court held the following: "We agree that the plain language of the statute is clear. The amendment requires quarterly fees be paid until a case is converted or dismissed. A case may be converted or dismissed at any time before or after a plan is confirmed up until the moment the court enters the final decree closing the case." *Id.* This interpretation means that "disbursements" in the post-confirmation stage would be subject to the same definition and requirements as previously applied to the disbursements in the pre-confirmation

stage. Congress did not indicate expressly or implicitly that it intended to change the meaning of "disbursement" simply because the quarterly fee would now be applied to the post-confirmation setting. *See P.J. Keating,* 205 B.R. at 667 ("Absent Congressional expression of a contrary intent, it must be assumed Congress desired this same broad interpretation to apply to reorganized debtors."). Without such an interpretation, the Amendment would have little effect; the sliding scale of payments required by § 1930(a)(6) would be moot since post-confirmation payments would not be considered in calculating the quarterly fees. Given a plain reading of the statute, this court holds that the quarterly fee requirement under § 1930(a)(6) applies to post-confirmation disbursements.

In addition, the history of § 1930(a)(6) indicates that it was intended to help the U.S. Trustee fund its own operations through the use of quarterly fees. When Congress amended this section, it intended to expand the revenue gaining capability of the U.S. Trustee. *See* H.R.Rep. No. 104–196, 104th Cong., 1st Sess. at 16–17 (1995) (discussing the need to increase revenue under this statute). In short, the history of this section lends substantial weight to the argument that Congress did not intend to limit the definition of disbursement through the Amendment. On the contrary, Congress expressly intended to help the U.S. Trustee fund itself by allowing it to charge a fee for all disbursements until a case is converted or dismissed.

Furthermore, the effect of the bankruptcy court's ruling is to create a dual system of quarterly fees, in which any post-confirmation payment is merely assessed the $250 minimum amount. This application of the statute contradicts Congress' intent to increase the revenue generating capacity of the U.S. Trustee by passing the Amendment. Moreover, the bankruptcy court's application serves to limit the quarterly fee to the statutory minimum in the post-confirmation context regardless of the amount of administrative work done by the Trustee. There is no indication that Congress intended to create dual standards for payments made before

and after a Plan is confirmed. Therefore, the Amendment must be read to apply a consistent standard and definition for disbursements in all chapter 11 cases which have not been converted or dismissed.

Appellees argue that the bankruptcy court's post-confirmation jurisdiction is limited only to the protection and implementation of the Plan in order to prevent interference with its effects. They argue, therefore, that quarterly fees that are not part of the Plan represent an illegitimate interference by the U.S. Trustee. This argument lacks merit and fails to address the clear congressional intent to apply quarterly fees to the post-confirmation process. As the *P.J. Keating* court held, "[t]he unadorned term 'disbursements' is certainly broad enough to cover payments made outside the Plan as well as those made pursuant to it." 205 B.R. at 666.

Given that Congress amended § 1930(a)(6) to include post-confirmation disbursements, this court finds that quarterly fees should be applied to all of Maruko's post-confirmation payments. This court finds no reason to limit which type of disbursements should be subject to the fee. The quarterly fee, therefore, applies to all payments made after February 13, 1994, when the confirmation order became final.

## V. CONCLUSION

Based on the foregoing analysis, this court reverses the bankruptcy court's ruling on the disbursement issue. This court finds that Maruko is responsible for the quarterly fee payments for disbursements made in the post-confirmation stage. This case is remanded for the calculation of the amount due by the debtor and for resolution of any other issues in accordance with this ruling.

**IT IS SO ORDERED.**