**In re CAMPESINOS UNIDOS, INC., Debtor.**

**Bankruptcy No. 96–01228–B11.**

United States Bankruptcy Court,
S.D. California.

March 31, 1998.

---

Colin W. Wied, San Diego, CA, for debtor.

David A. Ortiz, Attorney, Office the United States Trustee, San Diego, CA, for U.S. Trustee.

Helen T. Chao, Luce, Forward, Hamilton & Scripps, San Diego, CA, for Official Committee of Unsecured Creditors.

## ORDER ON MOTION OF UNITED STATES TRUSTEE TO COMPEL ACCOUNTING

PETER W. BOWIE, Bankruptcy Judge.

■ Prior to January 26, 1996 a Chapter 11 debtor was obligated to make quarterly payments to the United States Trustee until the case was converted or dismissed, or a Chapter 11 plan was confirmed. That requirement was imposed by statute, 28 U.S.C. § 1930(a)(6). The statute provided a graduated quarterly fee schedule which depended on the amount of quarterly disbursements made by the Chapter 11 debtor-in-possession or trustee. The issue then was what payments were included in the word "disbursements" for purpose of calculating the quarterly fee. In *St. Angelo v. Victoria Farms, Inc.*, 38 F.3d 1525 (9th Cir.1994), the court concluded:

> [A] plain language reading of the statute shows that Congress clearly intended "disbursements" to include *all* payments from the bankruptcy estate. (Emphasis in original.)

38 F.3d at 1534. Specifically, the court found that when the debtor sold its farm and lien creditors were paid with the proceeds, those payments were disbursements within the meaning of § 1930(a)(6) even if paid directly out of escrow.

The Congress amended § 1930, effective January 27, 1996, to provide that quarterly U.S. Trustee fees were due until the case was converted or dismissed, deleting plan confirmation as an event triggering cessation of the quarterly fee obligation. Then the issue became whether those fees were due in cases which had been confirmed prior to January 26, 1996. To resolve that issue, the Congress enacted a clarifying provision effective September 30, 1996. It provided that the quarterly fees would accrue and be payable in all cases pending on or after January 26, 1996, "regardless of confirmation status of their plans."

The general intent underlying the amendments to § 1930 is reasonably clear—the Congress saw it as a way to generate additional revenues payable to the U.S. Treasury, with the avowed expectation of making the U.S. Trustee system more nearly self-supporting. Certainly the Congress has the authority to do as it has, but this Court joins others who have questioned the quality of the information provided to the Congress in support of its action. In our view, a number of very fundamental premises have been overlooked.

At the threshold is the concept of Chapter 11 bankruptcy itself. Chapter 11 was intended to afford an opportunity for financially troubled businesses, and individuals, to reorganize their financial affairs, submit a plan to their creditors providing for some measure of repayment, and allowing those creditors to vote on the plan. The voting provision was intended, at least in part, to allow creditors to negotiate for the maximum repayment a debtor's operations could afford and still go forward. One of the requirements for confirmation has been that the proposed plan is feasible, meaning it is not likely to be followed by liquidation or the need for further

reorganization. 11 U.S.C. § 1129(a)(11). The latest amendment, making the quarterly fee obligation applicable to all cases pending January 27, 1996 regardless of whether they had been confirmed previously, has the potential for jeopardizing previously confirmed plans the projections for which did not provide for such fees.

It should be remembered that almost all Chapter 11 debtors are ill in the economic sense when they file Chapter 11. Of the Chapter 11 cases which are filed, only a minority result in a confirmed plan. The rest have been converted or dismissed, usually because they were too ill to reorganize. Of the minority that do proceed to plan confirmation, the creditors have usually squeezed the debtor for as much as the debtor can afford and still go forward. Reorganized debtors are left with little if any margin.

The reward of confirmation of a Chapter 11 plan is that generally the debtor's pre-confirmation obligations are discharged. 11 U.S.C. § 1141(d). In place of the old obligations is the reorganized debtor's new contract with its creditors. That contract is the plan, and generally provides within its four corners, like many contracts, the creditors' rights and procedures for enforcing its terms. The creditors have voted to accept the plan in most instances, and post-confirmation there is now a new entity, free to do business with the world at large. There may be some mop-up to be done on sorting out certain claims against the assets but those claims have been provided for in the plan. A cornerstone of Chapter 11 is that upon confirmation a new entity emerges.

The imposition of post-petition quarterly fees on a reorganized debtor is purely a revenue-generating device. However, it jeopardizes the success of the very entities the Chapter 11 process was intended to benefit—the creditors receive less and the reorganized debtor pays out money to the U.S. Trustee which should go to creditors. Compounding the situation is the fact that U.S. Trustees are now demanding post-confirmation reporting and documentation by debtors to justify their post-confirmation fees. Ironically, if the U.S. Trustee is correct in its expansive definition of "disbursements", the very imposition of post-confirmation fees creates the burdensome accounting and reporting requirement just to calculate the fee which would be due. So the § 1930 amendments create not only an economic drag on a struggling reorganized debtor, but also imposes additional labor demands not related to generating revenue to pay creditors.

This Court is a fan of the U.S. Trustee system and believes it works quite well in this district. But there is no real role for the U.S. Trustee post-confirmation in Chapter 11 cases, and it is an additional burden on a struggling reorganized debtor to have to pay fees for no benefit, *and* to have to prepare special documentation the creditors did not seek. It bears repeating that a confirmed Chapter 11 plan is a new contract between the debtor and its creditors, and creditors have new mechanisms for enforcement of that contract not stayed by either the automatic stay or the discharge injunction of 11 U.S.C. § 524.

Some courts have observed that the post-confirmation quarterly fee requirement of § 1930 is an incentive to reorganized debtors to substantially consummate the plan provisions and seek a final decree so the case can be closed. They theorize that the fee obligation ceases when the case is closed, although § 1930, as amended provides that the obligation to pay quarterly fees continues "until the case is converted or dismissed, whichever occurs first." Presumably, those courts consider closing a case and dismissing a case to be synonymous, but the Bankruptcy Code does not support such a construction. For example, 11 U.S.C. § 362(c)(2) provides that the automatic stay "continues until the earliest of—(a) the time the case is closed; (B) the time the case is dismissed; or . . . ." Another example is found in 11 U.S.C. § 1306(a), defining property of the Chapter 13 estate to include:

> (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted . . .; and

> (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dis-

missed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

The point is that within the Bankruptcy Code, dismissal is not synonymous with the closing of a case. It remains to be decided whether case closing cuts off the quarterly fee obligation of § 1930. See, e.g. *In re A.H. Robins Company, Inc.,* 219 B.R. 145 (Bankr. E.D.Va.1998); *In re Sedro–Woolley Lumber Co.,* 209 B.R. 987 (Bankr.W.D.Wash.1997).

The case before the Court presents facts involving the impact of § 1930 which are much more egregious than most, but which exemplify the problems the 1996 amendments have created. The reorganized debtor, CUI, is a non-profit organization, as was its predecessor. CUI operates two kinds of government-funded programs—restricted fund programs and unrestricted fund programs. The restricted fund programs are programs under which CUI is reimbursed by the public agencies according to a scheme of allowable expenses. Payment to U.S. Trustees has not been shown to be an allowable and reimbursable expense. Yet the U.S. Trustee argues the disbursements made by CUI for its ordinary and reimbursable operating expenses in its restricted funds programs must be included in calculating the quarterly fee due, even though those programs cannot by law either generate a profit or reimburse CUI for that quarterly fee. So where does the money for the quarterly fee come from if all "disbursements" are included in the calculation? They would have to come from the small pool of unrestricted money generated by the unrestricted programs. But those monies are the only pool to which the unsecured creditors can look, also. Just as the restricted fund programs would not allow as a reimbursable expense a quarterly U.S. Trustee fee, they would not allow payment to pre-petition unsecured creditors as a reimbursable expense.

CUI advises that pre-petition its total quarterly revenues, and corresponding expense payments, were about $1 million, much of it in the restricted fund programs. The debtor projected surplus earnings from the unrestricted programs to be approximately $20,000 per quarter—$80,000 per year. Section 1930 requires a $5,000 fee per quarter for each quarter in which disbursements are between one and two million dollars for the quarter. If CUI's activity continues at a pace comparable to pre-petition, CUI would owe to the U.S. Trustee $5,000 of the $20,000 total available funds per quarter, or 25%. That money should go to unsecured creditors, and they thought it would when they voted for the plan.

In this Court's view, the foregoing facts caricature the problems for debtors reorganizing under Chapter 11 caused by the 1996 amendments to 28 U.S.C. § 1930(a)(6). But they only set the stage for the question which the instant motion addresses. That is, what is to be included within the scope of the term "disbursements" for purposes of calculating the quarterly fee due under § 1930(a)(6).

CUI has encouraged this Court to follow the decision of our colleague in *In re Maruko, Inc.,* 206 B.R. 225 (Bankr.S.D.Cal.1997). In that case, the court focused on the phrase "*all* payments from the bankruptcy *estate*" as used in the 1994 decision of the Ninth Circuit in *St. Angelo v. Victoria Farms, Inc.,* 38 F.3d 1525, 1534. The court in *Maruko* reasoned that because the estate ceases to exist upon confirmation, there were no payments from the bankruptcy estate, so only the minimum fee of $250 per quarter was due. The decision in *In re SeaEscape Cruises, Ltd.,* 201 B.R. 321 (Bankr.S.D.Fla.1996) supported that view.

The U.S. Trustee appealed the *Maruko* decision to the United States District Court. By order filed February 5, 1998 the district court reversed the bankruptcy court, and concluded that "disbursements" meant all payments made by the reorganized debtor, whether for operating expenses or otherwise. This Court has been advised that the district court's decision has been appealed to the Ninth Circuit, but no decision is yet on the horizon.

Some other courts have recognized an intermediate position. E.g. *In re Betwell Oil and Gas Co.,* 204 B.R. 817 (Bankr.S.D.Fla. 1997). They argue that disbursements should mean only the payments made in accordance with the plan, and should not include the

daily, monthly, or annual garden variety operating expenses. There is some appeal to the argument, since however it is calculated the quarterly fee will come from funds which otherwise would have been available to creditors. Since the money comes, in effect, from the creditors, the fee ought to be in relation to the benefit the creditors otherwise receive, if at all, rather than on all the debtor's operating expenses. Notwithstanding its appeal, however, the Court finds no legal basis to so hold.

As noted at the outset, the general intent of the Congress to impose a post-confirmation quarterly tax on reorganizing Chapter 11 debtors is clear. At the time it amended § 1930(a)(6), the Congress understood that disbursements, pre-confirmation, meant all payments by the bankruptcy estate, including on secured obligations. In simply deleting plan confirmation as a terminating event, the Congress cannot be assumed to have redefined the term "disbursements" for post-confirmation purposes, and to have intended that that term would mean one thing pre-confirmation and something else post-confirmation. Accordingly, this Court joins others who have so held. See *In re Corporate Business Products, Inc.,* 209 B.R. 951 (Bankr.C.D.Cal.1997); *In re Roy Stanley, Inc.,* 217 B.R. 23 (Bankr.N.D.N.Y.1997); *In re A.H. Robins Company, Inc.,* 219 B.R. 145 (Bankr.E.D.Va.1998); *In re Sedro–Woolley Lumber Co., Inc.,* 209 B.R. 987 (Bankr. W.D.Wash.1997); *In re P.J. Keating Co.,* 205 B.R. 663 (Bankr.D.Mass.1997).

As should be evident, this Court believes that the 1996 amendments to 28 U.S.C. § 1930(a)(6) constitute imposition of a harsh tax on reorganizing debtors and their creditors which unfairly burdens the minority of Chapter 11 debtors who obtain plan confirmation. There is no real role for the U.S. Trustee's office post-confirmation and distributions to creditors should not be diminished just to fund the office's operations. But this Court cannot disregard the clear intent of the Congress. If the Congress knowingly chooses to impose on Chapter 11 reorganized debtors such an onerous burden, that is the Congress' prerogative. The courts do not make policy. This Court can only hope the Congress will reexamine this issue, and correct it. Accordingly, this Court concludes that the term "disbursements" in 28 U.S.C. § 1930(a)(6) includes all payments by the post-confirmation reorganized debtor, not just those expressly provided for in the plan, and not just the minimum of $250 because the disbursements were not made by the estate since the estate ceased to exist upon confirmation.

■ For the foregoing reasons, the reorganized debtor must provide to the U.S. Trustee an accounting showing all disbursements by the reorganized debtor, by quarter. The motion of the United States Trustee is granted.

IT IS SO ORDERED.