**In re P.J. KEATING COMPANY, Keating Sports Group, Inc., Roofblok Limited and Keating Materials Corp., Debtors.**

Bankruptcy Nos. 93–41350–JFQ to 93–41353–JFQ.

United States Bankruptcy Court, D. Massachusetts.

Feb. 28, 1997.

Charles R. Dougherty, Hill & Barlow, Boston, MA, for Debtor.

## *OPINION*

JAMES F. QUEENAN, Jr., Bankruptcy Judge.

Before the court in these consolidated cases is a motion for a final decree closing the cases. The motion is jointly filed by P.J. Keating Company, one of the reorganized debtors (the "Company"), and Alvarez & Marsal, Inc., the consummation agent appointed under the court's confirmation order (the "Consummation Agent"). The United States trustee (the "Trustee") opposes entry of a final decree unless the Trustee is first paid fees pursuant to section 1930(a)(6) of title 28 for the period after January 27, 1996, when section 1930(a)(6) was amended to apply to reorganized debtors with confirmed plans. The movants concede Congress intended the amendment to affect debtors whose plans were confirmed prior to the amendment's effective date. And because the Trustee seeks fees only for the period after that date, they do not contend imposition of the obligation upon confirmed debtors is invalid because of its retroactive effect. At issue is the meaning of the statutory term "disbursements," which determines the basis for calculation of the fees, and who is to pay the fees.

On June 17, 1994, I confirmed the Second Amended Plan of Reorganization (the "Plan"), which was jointly proposed by the Robert Keating Family, Oldcastle, Inc. and Fleet Bank of New York. Competing with the Company's own proposed plan, the Plan canceled all the Company's issued and outstanding capital stock and gave its three proponents various percentages of the stock.

Except for claims held by the plan proponents and unsecured tax claims, the Plan provided for the payment of unsecured claims and secured tax claims in full, with interest, on the Plan's effective date of July 14, 1994. Unsecured tax claims were to be paid in full, with interest, over six years from date of assessment. Other claims were to be paid in full or left unimpaired. Fleet Bank of New York was given $15 million and 20% of the Company's stock. The Robert Keating family received a 35% stock interest and the right to annual deferred compensation payments of $75,000 for seven years. Oldcastle, Inc. provided most of the funding for the Plan. It received in return a 45% stock interest and rights to purchase the other outstanding shares. Class A shareholders, who had caused the Company to propose its own plan, which was denied confirmation, received all the issued and outstanding shares of Roofblok Limited ("Roofblok"), a subsidiary of the Company, and certain other property.

On the Plan's effective date, the Company transferred to the Consummation Agent the property and cash required for the initial distributions, which the Consummation Agent immediately made. The cases could not be closed right away, however, because of pending objections to claims. Those objections have now been resolved. The principal distributions remaining to be made under the Plan are compensation payments to the Consummation Agent and its counsel, and deferred compensation payments to members of the Robert Keating Family. The Company will provide most of these funds. The Consummation Agent has remaining funds of less than $15,000.

Keating Sports Group, Inc., one of the original affiliated debtors, was substantively consolidated with the Company immediately prior to confirmation. Keating Materials Corp., another of the original affiliated debt-

ors, was merged into the Company on October 8, 1993. Left as the remaining debtors are the Company and Roofblok. They are under separate ownership pursuant to the Plan.

## I. AMOUNT OF FEES PAYABLE

### A. The Statute and Its Legislative History

On January 27, 1996, section 1930(a)(6) of title 28 was amended by section 211 of the Balanced Budget Downpayment Act, I, Pub.L. No. 104–99, 110 Stat. 26, 37–38 (1996), by deletion of the words "a plan is confirmed or." [1] As amended, section 1930(a)(6) provided as follows, with the language stricken by Public Law 104–99 appearing in brackets:

> In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) until [a plan is confirmed or] the case is converted or dismissed, whichever occurs first. The fee shall be $250 for each quarter in which disbursements total less than $15,000; $500 for each quarter in which disbursements total $15,000 or more but less than $150,000; $1,250 or each quarter in which disbursements total $150,000 or more but less than $300,000; $3,750 for each quarter in which disbursements total $300,000 or more but less than $3,000,000; $5,000 for each quarter in which disbursements total $3,000,000 or more. The fee shall be payable on the last day of the calendar month following the calendar quarter for which the fee is owed.

28 U.S.C. § 1930(a)(6) (1996).

Even prior to the September 30, 1996 amendment discussed below, some courts, based on legislative history, held the effect of the January 27, 1996 amendment was to im-

---

1. Section 211 provides: "Public Law 104–91 is amended by inserting after the words 'the protection of the Federal judiciary' in section 101(a), the following: 'to the extent and in the manner and', and by inserting at the end of the paragraph containing those words, but before the semicolon, the following: ': Provided That, with the exception of section 114, the General Provi-

sions for the Department of Justice included in [House Conference Report 104–378] are hereby enacted into law.' " Section 111 of the General Provisions in House Report 104–378 states as follows: "Section 1930(a)(6) of title 28, United States Code, is amended by striking the words 'a plan is confirmed or'."

pose payment obligations upon all reorganized debtors, including those whose plans were confirmed prior to the amendment. *In re McLean Square Assocs., G.P.,* 201 B.R. 436 (Bankr.E.D.Va.1996); *In re Foxcroft Square Co.,* 198 B.R. 99 (Bankr.E.D.Pa.1996); *In re Upton Printing,* 197 B.R. 616 (Bankr. E.D.La.1996); *In re Central Florida Elec., Inc.,* 197 B.R. 380 (Bankr.M.D.Fla.1996).

There appears to be no legislative history, under either the original statute or its amendment, which addresses the meaning of the word "disbursements." The history of the 1996 amendment does, however, articulate the amendment's purpose. As explained in the initial House Report from the Committee on Appropriations, Congress wanted to increase quarterly fee revenues by extending imposition of the fee into the postconfirmation period:

> *Decline in Bankruptcy filings.*—The recommendation [to increase the U.S. trustee's fees] assumes an overall decline in bankruptcy filings in 1996, as assumed in the budget, but reduces the amount of funding to correspond to this decline, which was not reflected in the budget request. The Committee understands that due to this decline, Chapter 11 filing fees which partially finance this program are anticipated to drop significantly. However, because cases with assets to administer often take two to three years, the pending caseload still in progress will require ongoing attention. The Committee recommendation includes an extension of the quarterly fee payments made under chapter 11 to include the period after a reorganization plan has been confirmed by the Bankruptcy Court until the case has been dismissed (i.e., the postconfirmation period). Presently, quarterly fees are collected only until the plan of reorganization in the case is confirmed by the court.

H.R.Rep. No. 104–196, at 16–17 (1995).

Although this legislative history does not address what was intended by "disbursements," it does indicate Congress intended the amendment to extend to the postconfir-

mation period the same payment obligations previously imposed preconfirmation. This is also apparent from the Joint Explanatory Statement of House Conference Report 104–378, which states:

> In addition, under section 111, the conferees agree to include an extension of postconfirmation quarterly fee payments made under Chapter 11 as proposed in both the House and Senate bills and expect that these fees will apply to all pending Chapter 11 cases with confirmed reorganization plans.

H.R.Conf.Rep. No. 104–378, at 188 (1995).

It is also clear Congress intended the reorganized debtor to be the party whose disbursements form the basis for calculation of the fees. The Conference Report says:

> The conference agreement includes section 111 as proposed in the House and Senate bills, which extends the quarterly fee payments for debtors under Chapter 11 of the Bankruptcy Code to include the period from when a reorganization plan is confirmed by the Bankruptcy Court until the case is converted or dismissed. The conferees intend that this fee will apply to both pending and new cases.

H.R.Conf.Rep. No. 104–378, at 229 (1995).

In summary, although there is no legislative history discussing the meaning of "disbursements," the amended statute and its legislative history show Congress wanted the debtor to pay the same quarterly fees after confirmation as it did before confirmation in order to ensure adequate funding of the bankruptcy system.

On September 30, 1996, additional legislation was enacted to augment quarterly fee revenues. Section 109 of the General Provisions for the Department of Justice, appearing in Title I of the Omnibus Appropriations Act for Fiscal Year 1997, Pub.L. No. 104–208, 110 Stat. 3009 (1996), affected the quarterly fees in two ways. First, Section 109(a) significantly increased the quarterly fee payments set forth in section 1930(a)(6).[2] Sec-

**2.** The text of Section 109(a) is as follows:
SEC. 109. (a) Section 1930(a) of title 28, United States Code, is amended in paragraph (3), by inserting "$" before "800", and in paragraph (6), by striking everything after "total less than $15,000;" and inserting in lieu

ond, section 109(d) removed any doubt concerning the prior amendment's application to debtors whose plans were confirmed before the prior amendment's effective date. Section 109(d) reads:

> Section 101(a) of Public law 104–91, as amended by section 211 of Public Law 104–99, is further amended by inserting ": Provided further, That, notwithstanding any other provision of law, the fees under 28 U.S.C. 1930(a)(6) shall accrue and be payable from and after January 27, 1996, in all cases (including without limitation, any cases pending as of that date), regardless of confirmation status of their plans" after "enacted into law".

Pub.L. No. 104–208, 110 Stat. 3009 (1996).

This amendment was apparently enacted in response to the decisions of some bankruptcy courts holding that postconfirmation quarterly fees could not be collected from debtors with plans confirmed prior to the January 27, 1996 effective date of the earlier amendment. *See, e.g., In re Beechknoll Nursing Homes, Inc.,* 202 B.R. 260 (Bankr. S.D.Ohio 1996); *In re Hudson Oil Co., Inc.,* 200 B.R. 52 (Bankr.D.Kan.1996); *In re Precision Autocraft, Inc.,* 197 B.R. 901 (Bankr. W.D.Wash.1996).

Here again, Congress said nothing about the meaning of "disbursements." But it gave no indication that postconfirmation debtors are to pay fees calculated differently from those assessed to preconfirmation debtors.

### B.  Meaning of "Disbursements"

■ The Trustee says the disbursements forming the measure of the fee are disbursements of all kinds made by reorganized debtors, including disbursements made to suppliers, employees and the like in the ordinary course of business.  Under this interpreta-

tion, the Company estimates it would owe $5,000 for each of the first three quarters of 1996, and $10,000 for the last quarter pursuant to the September 30, 1996 amendment, or a total of $25,000.  The Company contends the relevant disbursements are limited to payments made by the Consummation Agent pursuant to the Plan, which were apparently minimal during 1996.  This would mean the Company's obligation for 1996 would total only $1,000.

The unadorned term "disbursements" is certainly broad enough to cover payments made outside the Plan as well as those made pursuant to it.  This was the conclusion courts came to in decisions construing section 1930(a)(6) prior to the January 27, 1996 amendment.  For example, the court in *In re Ozark Beverage Co., Inc.,* 105 B.R. 510 (Bankr.E.D.Mo.1989), rejected the argument that only disbursements to prepetition creditors are to be considered in calculating the fee.  Noting the absence of legislative history, the court could find no reason for such a limitation on the term.  *Id.* at 512.  It refused to become embroiled in considerations leading to what is arguably a more equitable interpretation, stating that the court is "a vehicle for statutory interpretation rather than enactment." *Id.*  I agree.  It is undoubtedly true the Trustee has done less after confirmation than before to "earn" these fees.  But that is a consideration for Congress, not the courts.

A leading decision for a broad construction of "disbursements" is *St. Angelo v. Victoria Farms, Inc.,* 38 F.3d 1525 (9th Cir. 1994), construing the statute prior to its being amended to apply to reorganized debtors. · The debtor there had sold its farm. An escrow agent and a lawyer handling the sales proceeds had paid various sums to mortgagees and in satisfaction of closing

---

thereof: "$500 for each quarter in which disbursements total $15,000 or more but less that $75,000; $750 for each quarter in which disbursements total $75,000 or more but less than $150,000; $1,250 for each quarter in which disbursements total $150,000 or more but less than $225,000; $1,500 for each quarter in which disbursements total $225,000 or more but less than $300,000; $3,750 for each quarter in which disbursements total $300,000 or more but less than $1,000,000; $5,000 for

each quarter in which disbursements total $1,000,000 or more but less than $2,000,000; $7,500 for each quarter in which disbursements total $2,000,000 or more but less than $3,000,000; $8,000 for each quarter in which disbursements total $3,000,000 or more but less than $5,000,000; $10,000 for each quarter in which disbursements total $5,000,000 or more.  The fee shall be payable on the last day of the calendar month following the calendar quarter for which the fee is owed.

costs. Observing that legislative history was nonexistent, the court stated "a plain language reading of the statute shows that Congress clearly intended 'disbursements' to include *all* payments from the bankruptcy estate." *Id.* at 1534. The court held all the payments were to be included in computing the fee. It said: "The statute does not in any way distinguish between payments to secured creditors and payments to nonsecured creditors." *Id. See also In re Hays Builders, Inc.,* 144 B.R. 778 (W.D.Tenn.1992) (term "disbursements" includes those made by third parties on behalf of debtor); *In re Wernerstruck, Inc.,* 130 B.R. 86 (D.S.D.1991) (prepayment to lender included among "disbursements"). Absent Congressional expression of a contrary intent, it must be assumed Congress desired this same broad interpretation to apply to reorganized debtors.

Section 326 of the Bankruptcy Code limits the compensation of a trustee appointed to serve in a case under chapter 7 or 11. It does so in terms of a sliding scale of percentages applicable to specified amounts of "moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims." 11 U.S.C. § 326(a) (1994). Arguably, the phrase "parties in interest" operates to exclude disbursements made in the ordinary course of business by a trustee operating a business. But this restricted reading of the statute has been urged upon a court without success. *See In re Orient River Invs., Ltd.,* 133 B.R. 729 (Bankr.E.D.Pa. 1991). In section 1930(a)(6), "disbursements" appears without any indication of the intended recipients. Thus, section 1930(a)(6) is not even open to an interpretive argument along the lines made in *Orient River.*

The Company contends the only relevant disbursements are those made from the bankruptcy estate, observing that *St. Angelo* speaks of " 'disbursements' from the bankruptcy estate." 38 F.3d at 1534. The Company's 1996 disbursements, the argument continues, were not made from the bankruptcy estate, because by virtue of section 1141(b) of the Bankruptcy Code property of the bankruptcy estate vested in the Company

at confirmation. I am not persuaded. Prior to being amended, section 1930(a)(6) applied only to preconfirmation debtors. It is therefore to be expected that courts construing the statute as it then read would refer to payments from the bankruptcy estate. Until confirmation, all payments made in the operation of a business necessarily come from the estate. Congress has given no indication that ordinary course of business payments should not also increase the fees payable by reorganized debtors. Congress intended to enhance revenues by these amendments. To restrict "disbursements" to those made from the bankruptcy estate would frustrate that intent. I therefore disagree with *In re SeaEscape Cruises, Ltd.,* 201 B.R. 321 (Bankr.S.D.Fla.1996), which held only disbursements from the bankruptcy estate should be taken into account in calculating the fees.

The January 27, 1996 amendment was not well drafted. If, as is likely, these cases are never converted or dismissed, literally read the statute assesses the fees *ad infinitum.* Recognizing that this is nonsensical, the Trustee does not ask to be paid for future quarters. Indeed, the Trustee requests payment for no quarter of 1997. In *In re C n' B of Florida, Inc.,* 198 B.R. 836 (Bankr. M.D.Fla.1996), the court noted that the statute's literal meaning is silly. It held fees are payable after confirmation only if the case is thereafter converted or dismissed. This is questionable statutory interpretation. And it frustrates Congressional intent to raise revenue.

## II. PARTIES LIABLE

■ The Company concedes that it, not the Consummation Agent, is responsible for the fees applicable to its disbursements if the court accepts the Trustee's position. But Roofblok contends the Consummation Agent is responsible to pay the fees attributable to Roofblok's disbursements. Roofblok points to section 4.2 of the Plan, which provides: "The Consummation Agent shall pay in cash on the Effective Date ... any fees or charges assessed against any of the Debtors under chapter 123 of Title 28, United States Code (28 U.S.C. § 1911, *et seq.*)."

There are several answers to this argument. First, section 4.2 obviously contemplated payment of fees under section 1930 as it read at confirmation, which calculated fees based only upon disbursements through confirmation. The fees were to be paid upon the "Effective Date" of the Plan. Second, because the Consummation Agent does not have sufficient funds to pay the fees now due, imposition of this liability upon the Consummation Agent would make it personally liable for the fees. But Section 9.11 of the Plan states: "The Consummation Agent shall have no personal liability for his act or omissions as Consummation Agent except for bad faith, willful misconduct, gross negligence or wilful disregard of his duties." In disbursing almost all its funds prior to the amendment, the Consummation Agent was certainly not guilty of this type of conduct.

Finally, it seems clear from the Plan that the Consummation Agent is responsible to make payments only to the extent it has the cash. Section 10.16 provides:

"If a Claim becomes payable by the Consummation Agent after the Effective Date pursuant to Section 10.6 of the Plan, the Consummation Agent shall make demand upon the reorganized [Company] for the full amount of such payment, and the reorganized [Company] shall remit such amount to the Consummation Agent within three business days after receiving such demand."

For the foregoing reasons, an order has issued requiring the Company and Roofblok to make payments to the Trustee based upon their respective 1996 disbursements of all kinds. Disbursements by the Consummation Agent from its remaining funds are to be considered disbursements by the Company during 1996.