**In re PARS LEASING, INC., Debtor.**

**Bankruptcy No. 97–10392–FM.**

United States Bankruptcy Court,
W.D. Texas,
Austin Division.

Nov. 20, 1997.

Frank Laphan, Austin, TX, Asst. U.S. Trustee.

Craig Smith, Austin, TX, for Debtor.

## MEMORANDUM OPINION

FRANK R. MONROE, Bankruptcy Judge.

The Court held a hearing on October 27, 1997 on confirmation of the debtor's Second Amended Plan of Reorganization. The Plan was confirmed subject to determination of the proper amount of fees due by the debtor to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6). This is a core proceeding under 28 U.S.C. § 157(a) and (b)(1) in that it is a matter which arises in a case under Title 11 and which deals with the allowance of an administrative claim. It is, therefore, a matter over which this Court has the jurisdiction to enter a final order under

28 U.S.C. § 1334(a) and (b), 28 U.S.C. § 157(a) and (b)(1), 28 U.S.C. § 151 and the Standing Order of Reference from the United States District Court in the Western District of Texas. This Memorandum Opinion shall serve as Findings of Fact and Conclusions of Law under Bankruptcy Rules 7052 and 9014.

### Statement of Facts

The debtor's sole source of revenue comes from payments that it receives under vehicle leases it has with various motor freight common carriers for the truck tractors that are owned by the Debtor. Under these leases, which vary somewhat, carriers will generally deduct certain expenses of operation pursuant to the terms of the leases from the payments it makes to the debtor. These deducted expenses are in the nature of advances made to the drivers by the carriers, road taxes, fuel taxes, licenses, tolls, and insurance premiums. The gross amounts due under the leases by the carriers to the debtor are reported to the Internal Revenue Service as income for the purposes of determination of the Debtor's income tax. However, only the net amounts after deduction of the expenses paid by the carrier are ever in the debtor's control. It is these net amounts that come to the debtor and that the debtor has disbursed throughout these proceedings. The expenses which the carriers pay and deduct from what they remit to the debtor are likewise properly claimed by the debtor as expenses and deducted from its total income on its corporate income tax return.

### Legal Issue

Should the debtor's payments to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) be figured only on the disbursements that the debtor itself makes or on those disbursements made by the carriers pursuant to lease agreements with the debtor as well?

### Legal Analysis & Conclusions

The statute at issue is 28 U.S.C. § 1930(a)(6). The relevant language is as follows:

"In addition to the filing fee paid to the Clerk, a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) until a plan is confirmed or the case is converted or dismissed, whichever occurs first. The fee shall be $150 for each quarter in which *disbursements* total less than $15,000...." (Emphasis added).

The key word is disbursements. The question in this case is disbursements by whom; solely by the debtor, or by the debtor and those made on behalf of the debtor by other parties pursuant to contracts with the debtor.

■ Courts are required to look at the plain language of the statute and to give words used in statutes their plain and common meaning. *Perrin v. U.S.*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979).

■ This statute is not ambiguous. The statute simply fails to give a definition of the term "disbursements". We need not look at the legislative history as that is only appropriate when the statute is not clear. Failure to define a term common to the English language does not, in and of itself, make a statute unclear or ambiguous. And, in this case, looking to the legislative history would be an exercise in futility because no definition of the word "disbursement" is contained in it either.

"Disbursement" is defined as "to pay out, commonly from a fund. To make payment in settlement of a debt or account payable." *Black's Law Dictionary* (5th ed.1979). Payment is defined as, "a discharge of an obligation or debt...." *Id.* at 1016. Also, "In a more restricted legal sense, payment is the performance of a duty, promise or obligation, or discharge of a debt or liability, by the delivery of money or other value by a debtor to a creditor where the money or other valuable thing is tendered and accepted as extinguishing debt or obligation in whole or in part. Also, the money or other thing so delivered." *Id.* citing U.C.C. §§ 2–511, 3–604. Also, "Payment is a delivery of money or its equivalent in either specific property or services by one person from whom it is due to another person to whom it is due." *Id.*

One might legitimately submit that these definitions are of little use to the question at hand as well.

There are several cases in support of the U.S. Trustee's position. See *In re Meyer*, 187 B.R. 650 (Bankr.W.D.Mo.1995) Disbursements made a secured creditor by an escrow agent is a disbursement for purposes of 28 U.S.C. § 1930(a)(6); *In re Hays Builders, Inc.*, 144 B.R. 778, 780 (Bankr.W.D.Tenn. 1992) "All disbursements, whether direct or through a third party, [are] included in the calculation of fees due to the trustee under 1930(a)(6)."

Other cases not directly on this point have also used a broad construction of the term "disbursements". See *In re Flatbush Associates*, 198 B.R. 75 (Bankr.S.D.N.Y.1996); *In re Wernerstruck, Inc.*, 130 B.R. 86, 89 (Bankr.D.S.D.1991); *In re Ozark Beverage, Inc.*, 105 B.R. 510, 511–12 (Bankr.E.D.Mo. 1989); *In re Marlon Dunn Contracting, Inc.*, 203 B.R. 783 (Bankr.M.D.Fla.1996); and *In re Betwell Oil and Gas Co.*, 191 B.R. 954 (Bankr.S.D.Fla.1996).

■■■ In the present case the debtor's president testified that if the carriers with whom the debtor had contracts and who were the parties who made the disbursements in question did not make the payments, then the debtor would have to make the payments. For example, if the carrier disbursed gross dollars under the contracts in question to the debtor, the debtor would have to pay the expenses which the carriers had incurred and generally deduct from their remittance to the debtor. Further, the payments made by the carriers are pursuant to written lease agreements with the debtor whereby the debtor leases to the carriers its truck tractor rigs. It is clear that the disbursements made by these carriers benefit this debtor and its estate, are made pursuant to executory contracts which have been assumed by this estate, and constitute property of the estate.

The Debtor claims that these payments are just "constructive disbursements". Even if that were the case, they are still disbursements. The statute does not limit disbursements to those made directly by the debtor. It was intended, in the opinion of this Court, to be broadly applied and virtually all courts have so applied it. To adopt the narrow view that the debtors urge would open the system up to undue manipulation. For example, just prior to entering the domain of Chapter 11, a debtor could create with its major contracting parties a procedure whereby those major contracting parties would pay a significant portion if not all of the expenses attendant to their particular contract with the debtor, remitting only net monies and thereby frustrating the intent of the statute. The United States Trustee system is a self-funding system and that is an additional factor that should be taken into consideration in construing the term "disbursements".

It seems to this Court that the great weight of previous authority on this issue has construed the term "disbursements" broadly enough to include those disbursements made by the carriers in this case pursuant to contracts with the debtor for the benefit and on behalf of the debtor. This Court agrees that that is the proper construction to use in this case.

Debtor tries to make an issue of the fact that it talked with United States Trustee's employees, asked for guidance in calculating the amount of the quarterly fee, and received a positive answer to the question as to whether or not they were to calculate the fee based upon the amount entered on the line entitled "cash/other disbursements" on page 8 of the monthly operating report. The U.S. Trustee points out, however, that the debtor failed to disclose to the U.S. Trustee's Office at that time that there was a big difference between that number and the number which would otherwise be reported at page 7 of the monthly operating report which is the number for all expenses. The U.S. Trustee offers that, having made less than full disclosure, the answer of the U.S. Trustee's Office should not be given any type of estoppel effect as if they had been told the complete facts, they would have given a different answer. All of this is of no great moment as estoppel is not an issue that has been raised effectively in this matter. And, under the facts of this case estoppel is not appropriate.

Accordingly, it will be the ruling of this Court that the debtor's quarterly fee payment pursuant to 28 U.S.C. § 1930(a)(6) should in this case be calculated upon not just the actual cash disbursements made by the debtor-in-possession, but also those cash disbursements made by the common carriers with whom the debtor had contracts and who made cash disbursements pursuant to those contracts to third parties and deducted those disbursements from the remittance to the debtor under the contracts.

The debtor, upon its theory of the case, has paid fees to the United States Trustee of $750.00 for the first quarter of 1997 and $1,500.00 each for the second and third quarters of 1997 for a total of $3,750.00. Using the U.S. Trustee's analysis, adopted by the Court, the debtor owes $3,750.00 in fees for each of the first three quarters of 1997, to the total of $11,250.00. Under this analysis, the debtor then owes an additional $7,500.00 to the U.S. Trustee's Office.