[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 05 2001
THOMAS K. KAHN
CLERK

No. 99-12898

D. C. Docket No. 97-06042-CV-WPD

IN RE:   JAMKO, INC., d.b.a SHOE BAZAAR,

Debtor.

DONALD F. WALTON,  U.S. Trustee,

Plaintiff-Appellee,

versus

JAMKO, INC., d.b.a Shoe Bazaar,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Florida

**(February 5, 2001)**

Before TJOFLAT, HILL and POLITZ*, Circuit Judges.

---

*Honorable Henry A. Politz, U. S. Circuit Judge for the Fifth Circuit, sitting by designation.

HILL, Circuit Judge:

This appeal presents an issue of first impression in this circuit under the Bankruptcy Code. Title 28 U.S.C. § 1930(a)(6), as amended in 1996, authorizes the United States Trustee (UST) to collect post-confirmation quarterly fees from a Chapter 11 reorganized debtor until its Chapter 11 case is converted, dismissed or closed.[1] The fees are based upon 'disbursements' made by the debtor during this time. The issue here is whether the fees should be based upon the total sum of all disbursements the debtor makes, including its ordinary and necessary business operating expenses, or upon only payments made by the debtor pursuant to its confirmed plan of reorganization? We conclude that a proper statutory interpretation of amended § 1930(a)(6) is that Congress intended to impose a tax upon all post-confirmation disbursements made by a reorganized debtor, from

---

[1] Both parties here agree that all pre-confirmation disbursements of a bankruptcy estate are included in the calculation of trustee fees whether made before or after 1996. In this regard, the district court in *In re Quality Truck & Diesel Injection Service, Inc.*, 251 B.R. 682, 686 (S.D.W.Va. 2000) provided the following useful overview of the bankruptcy process in the context of UST fees, both before and after plan confirmation:

> When a petition for Chapter 11 relief is filed, a bankruptcy estate is created. *See* 11 U.S.C. § 541. The bankruptcy estate is a separate legal entity. *See In re Pace*, 67 F.3d 187, 192 (9th Cir. 1995). After confirmation of a reorganization plan, the assets of the bankruptcy estate revest under the name of the reorganized debtor and are no longer part of the bankruptcy estate. 11 U.S.C. § 1141(b). The bankruptcy estate terminates at confirmation because the assets and business are carried on by the reorganized debtor. The majority of the disbursements are then made by the reorganized debtor in the ordinary course of its business.

whatever source, including ordinary operating expenses. Based upon the following, the order of the district court is affirmed.

## I.

Jamko, Inc., d/b/a/ Shoe Bazaar (Debtor) voluntarily filed for bankruptcy relief under the reorganization provisions of Chapter 11 of the Bankruptcy Code in February 1996. 11 U.S.C. §§ 1101-1174. In November 1996, the bankruptcy court held a hearing to consider the confirmation of Debtor's Second Amended Plan of Reorganization and the Motion to Resolve Dispute Regarding Post-Confirmation Quarterly Fees filed by the UST.[2] In December 1996, the bankruptcy court entered an order confirming Debtor's Second Amended Plan, limiting the calculation of post-confirmation fees to only those "disbursements made pursuant to the Plan of Reorganization." The UST appealed.

In July 1999, the district court reversed the bankruptcy court and remanded for a recalculation of fees, holding that, based upon the plain language of amended

---

[2] The UST filed the motion as a result of Debtor's opposition to language in a proposed confirmation order that provided, *inter alia*, for the payment of fees "based upon all post-confirmation disbursements made by the reorganized debtor." The Debtor asserted that post-confirmation fees should be calculated only on disbursements made pursuant to the confirmed plan.

3

§ 1930(a)(6) and its legislative history, post-confirmation fees should be calculated on all post-confirmation disbursements, not just those made pursuant to the confirmed plan. The Debtor now appeals.

## II.

In bankruptcy proceedings, we review *de novo* conclusions of law made by the bankruptcy court or the district court. *General Trading, Inc. v. Yale Materials Handling Corp.*, 119 F.3d 1485, 1494 (11th Cir. 1997). We review factual findings for clear error. *Id.*

## III.

In January 1996, Congress amended § 1930(a)(6) by deleting the five-word phrase "a plan is confirmed or." With the stricken language appearing boldly below in brackets, amended § 1930(a)(6) now provides in pertinent part:

> (a) Notwithstanding section 1915 of this title, the parties commencing a case under title 11 shall pay to the clerk of the district court or the bankruptcy court . . . the following filing fees:
> ***
> (6) In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (including an fraction thereof) until **[a plan is confirmed or]** the case is converted or dismissed, whichever occurs first. The fee shall be $250 for each quarter in which disbursements total less than $15,000; $500 for each quarter in which disbursements total $15,000 or more but less than $150,000 . . . The fee shall be payable on the last day of the calendar month following the calendar quarter for which the fee is owed.

4

28 U.S.C. § 1930(a)(6).

The statute mandates that the amount of quarterly fee be calculated according to a graduated scale based upon the total sum of 'disbursements.' As disbursements increase, so do fees. However the term 'disbursements' is not defined in § 1930(a)(6). Neither is it defined in the legislative history of the section.[3] The critical issue becomes, therefore, does the term 'disbursements' include all disbursements made by the reorganized Debtor post- confirmation, including those made in the ordinary course of business that are unrelated to its confirmed plan, or is it limited only to those post-confirmation disbursements made pursuant and related to the plan? *See In re Quality Truck & Diesel Injection Service, Inc.*, 251 B.R. 682, 686 (S.D.W.Va. 2000) citing *In re Sedro-Woolley Lumber Co., Inc.*, 209 B.R. 987, 988 (Bankr.W.D.Wash. 1997).

---

[3] Although decided prior to the 1996 amendment, and thereby pertinent only to pre-confirmation payments made from a bankruptcy estate, the Ninth Circuit in *St. Angelo v. Victoria Farms, Inc.*, 38 F.3d 1525, 1534 (9th Cir. 1994) stated the following, as dicta:

> The term "disbursements" is not defined anywhere in 28 U.S.C. § 1930(a)(6), its legislative history, or the case law. However, a plain language reading of the statute shows that Congress clearly intended "disbursements" to include all payments from the bankruptcy estate. As the Supreme Court noted in *Perrin v. United States,* 444 U.S. 37, 42 . . . (1979), "[a] fundamental canon of statutory construction is that . . . words will be interpreted as taking their ordinary, contemporary, common meaning." The definition of "disburse" is "to expend . . pay out." Webster's Third New International Dictionary 644 (1976).

5

Prior to the January 27, 1996, amendment, typically quarterly fees were due from the bankruptcy estate only until the debtor's plan of reorganization was confirmed. *In re A.H. Robins Co., Inc.*, 219 B.R. 145, 151 (Bankr.E.D.Va.1998). After the amendment, fees were continued past confirmation until the case was converted or dismissed.[4] *In re Celebrity Home Entertainment, Inc.,* 210 F.3d 995, 998 (9th Cir. 2000) citing *In re Maruko, Inc.*, 219 B.R. 567, 572 (S.D.Cal.1998); *In re Postconfirmation Fees*, 224 B.R. 793, 797-99 (E.D.Wash.1998); *In re Boulders on the River, Inc.*, 218 B.R. 528, 541 (D.Or.1997); *see also Quality Truck*, 251 B.R. at 687 citing *A. H. Robins*, 219 B.R. at 151; *In re N. Hess' Sons, Inc.*, 218 B.R. 354, 360-61 (Bankr.D.Md.1998); *In re P.J. Keating Co., Inc.*, 205 B.R. 663, 666-67 (Bankr.D.Mass.1997).

Although the Ninth Circuit decision in *Celebrity Home* was issued in April 2000, in August 2000, the district court in *U.S. Trustee v. Pettibone Corp.*, 251 B.R. _____ (N.D.Ill.2000) made the statement at note 3 that "[t]o date, no United States Court of Appeals has decided whether the term "disbursements" includes a

---

[4] The amendment was included in section 211 as part of the Balanced Budget Downpayment Act, I, Pub.L. No. 104-99, 110 Stat. 26, 37-38 (1996). When uncertainty developed as to whether the amendment applied retroactively to already pending cases with confirmed plans, in September, 1996, Congress enacted a second amendment, once again including it in a revenue measure, clarifying that post-confirmation fees were owed in all cases. *See* Omnibus Consolidated Appropriations Act for Fiscal Year 1997, Pub.L. No. 104-208, § 109(d), 110 Stat. 3009, 3009-19 (1996). The clarification also included an across-the-board structured fee increase. H.Rep. 104-676, 104th Cong., 2d Sess. (July 16, 1996).

reorganized debtor's ordinary course of business post-confirmation payments." *Id.* at _____. The rationale set forth by the *Pettibone* court was that the Ninth Circuit in *Celebrity Home* "did not distinguish between types of post-confirmation disbursements" . . . neither did it "explicitly hold that 'all' payments made by a reorganized debtor count for purposes of determining UST fees . . . ." *Id.* We disagree with this narrow reading of *Celebrity Home* for the following reasons.

Historically, when § 1930 was first enacted in 1986, it was established to operate as a self-funded program, imposing the costs of the UST Program on "the users of the bankruptcy system, not the taxpayer." *See* Pub.L. No. 99-554, § 117, 100 Stat. 3088; H.R.Rep. No. 99-764, 99th Cong., 2d Sess. 22, 26 (1986). As a revenue-generating mechanism, UST fees are akin to a user tax. *See Hess,* 218 B.R. at359.

By the mid-1990's, however, a decline in Chapter 11 filings had caused a concomitant sharp decline in quarterly fees.[5] The legislative history of the 1996 amendment makes clear that in response to this reduction in financial resources, as well as to a stated need for increased Chapter 11case supervision and post-confirmation oversight by the addition of twenty more UST staff attorneys,

---

[5] *See* "U.S. Trustee Revenue Drop Causes Chapter 11 Quarterly Fee Increases and Imposition of Post-Confirmation Fees," Am.Bankr.Inst.J. 26 (Feb. 16, 1997).

Congress was intent on raising additional revenue. *See* H.R.Rep. No. 104-196, 104th Cong., 1st Sess. at 16-17 (1995); S. Rep. No 104-139, 104th Cong., 1st Sess. at 15 (1995).

In 1996, Congress was also intent on balancing the budget. By removing one of the three terminating events, Congress could maximize revenues by extending the scope of the fee to include post-confirmation disbursements as well as pre-confirmation disbursements.

The UST fee on pre-confirmation disbursements, before or after amendment, is calculated to include all disbursements, including those made in the ordinary course of business. It is not limited to payments made to creditors. *Pettibone*, 251 B.R. at ___. There is nothing in the statute or legislative history to indicate that Congress intended that such a distinction be made post-confirmation. *Id.* There is ample support, however, in the legislative history and case law, including the Ninth Circuit's decision in *Celebrity Home,* to conclude that Congress intended the UST fee to apply to all disbursements made during the entire process, including ordinary operating expenses, before or after confirmation, as a type of user tax on those who benefit the most from the program.[6]

---

[6] We are cognizant of the positions made by other courts that this broad interpretation could be viewed as creating a "special tax" on reorganized debtors, especially when the UST does less after confirmation than before to "earn" these fees. We are also aware of the argument that this interpretation could jeopardize the success of the very entities that the Chapter 11 process was

IV.

The decision of the district court is AFFIRMED.

---

intended to benefit, because creditors receive less when the UST receives more. *See Pettibone,* 251 B.R. at ____ ; *In re Campesinos Unidos, Inc.,* 219 B.R. 886, 888 (Bankr.S.D.Cal.1998); *Keating,* 205 B.R. at 666. We respect these positions but decline to follow them. If change is necessary, it is a consideration for Congress, not the courts.