*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0336P (6th Cir.)
File Name: 01a0336p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

In re: DANNY'S MARKETS, INC., et al.,

                *Debtors.*

_____

DONALD M. ROBINER, United States Trustee,

                *Appellee,*

*v.*

DANNY'S MARKETS, INC.; DANNY'S FOODS, PLYMOUTH, INC.; DANNY'S LIVONIA, INC.; DANNY'S MERRIMAN, INC.; DANNY'S WESTLAND MARKETS, INC.; DANNY'S FOODS, INC.; DANNY'S JOY, INC.,

                *Appellants.*

No. 00-1345

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 99-10445—Victoria A. Roberts, District Judge.

1

Submitted:  June 15, 2001

Decided and Filed:  September 21, 2001

Before:  MARTIN, Chief Judge; NELSON, Circuit Judge;
RICE, Chief District Judge.*

---

**COUNSEL**

**ON BRIEF:** Arnold S. Schafer, Max J. Newman, SCHAFER
& WEINER, Bloomfield Hills, Michigan, for Appellants.
Paul W. Bridenhagen, UNITED STATES DEPARTMENT
OF JUSTICE, EXECUTIVE OFFICE FOR UNITED
STATES TRUSTEES, Washington, D.C., Tauras N. Ziedas,
UNITED STATES DEPARTMENT OF JUSTICE, OFFICE
OF THE TRUSTEE, Detroit, Michigan, for Appellee.

---

**OPINION**

---

BOYCE F. MARTIN, JR., Chief Judge.   This appeal
presents an important question of statutory construction
arising out of a 1996 congressional amendment to the
bankruptcy code.  We find that the trustee fees in a Chapter
11 case must be based on the amount of all payments until the
case is converted, dismissed, or closed.  In so doing, we
largely concur with the two other circuits to have considered
the amendment's effect on the scope of "disbursements," a
critical term in these cases, after a Chapter 11 reorganization
plan has been confirmed.

The debtors in this case are seven corporations that
collectively constitute a family-run grocery store chain called

---

\* The Honorable Walter Herbert Rice, Chief United States District
Judge for the Southern District of Ohio, sitting by designation.

The Ninth Circuit also stressed this passage in reaching an identical result, *see Tighe v. Celebrity Home Entm't, Inc. (*In re *Celebrity Home Entm't, Inc.)*, 210 F.3d 995, 998 (9th Cir. 2000), and the Eleventh Circuit has unequivocally endorsed the *Tighe* reasoning. *See Walton v. Jamko, Inc. (*In re *Jamko, Inc.)*, 240 F.3d 1312, 1315-16 (11th Cir. 2001). Moreover, we note that the amendment's legislative history additionally indicates that its purpose was to raise revenue for the trustee program. Congress nevertheless could have – and, for many of the reasons marshaled by the bankruptcy court in this case, *see* In re *Danny's Markets, Inc.*, 239 B.R. 342, 347-49 (Bankr. E.D. Mich. 1999), perhaps even should have – declined to maximize the potential revenue its change in the law might generate, but there is unfortunately no indication of any such benevolence or restraint on its part. *Accord Jamko*, 240 F.3d at 1316 n.6.

Judgment AFFIRMED.

Danny's Markets. On April 24, 1997, each member of Danny's Markets voluntarily filed for Chapter 11 bankruptcy. On May 1, 1998, the bankruptcy court confirmed a joint plan of reorganization requiring Danny's Markets to pay in full the claims of its unsecured creditors by June 30, 2004. The plan also allowed Danny's Markets to satisfy these claims in advance of that date, and gave it a discount in the event it took advantage of that opportunity. Danny's Markets paid in full all but its disputed claims by June 30, 1998. On September 30, the case was administratively closed by the bankruptcy court.

On May 13, 1999, the United States Trustee for the case, Donald Robiner, moved to convert the bankruptcy to a Chapter 7 proceeding because Danny's Markets had not paid him any fees between the date of confirmation and the date the case was closed.[1] Danny's Markets acknowledged that it owed some fees for that period, but contested the exact amount on the same ground now before us: Robiner's insistence that Danny's Markets' disbursements, the statutory basis for the fees, included all of its expenditures during that time. The bankruptcy court agreed with Danny's Markets that its disbursements were only those expenditures which were pursuant to its reorganization plan, and denied Robiner's motion. Robiner then appealed the fee calculation to the district court, which, on February 7, 2000, reversed the bankruptcy court. This appeal followed.

In cases in which they are appointed, bankruptcy trustees perform a range of monitoring and administrative services for bankruptcy courts, and fees are collected for the purpose of funding the United States's trustee program. *See* 28 U.S.C. § 704 (duties of trustee); 28 U.S.C. § 589a(b)(5) (funding of trustee program). These fees are governed by 28 U.S.C. § 1930(a)(6), which provides, in relevant part:

---

[1] We have held that closing ends a debtor's obligation to pay the trustee fee. *See Vergos v. Gregg's Enters., Inc.*, 159 F.3d 989, 993 (6th Cir. 1998).

In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) until the case is converted or dismissed, whichever occurs first. The fee shall be $250 for each quarter in which disbursements total less than $15,000; $500 for each quarter in which disbursements total $15,000 or more but less than $75,000 . . . The fee shall be payable on the last day of the calendar month following the calendar quarter for which the fee is owed.

In this quotation's omitted portion, the trustee fee continues to increase gradually based on the amount of disbursements made in the case, topping out at $10,000 if "disbursements" in one quarter total over $5,000,000. The crux of this appeal is the meaning of "disbursements" in light of the recent congressional deletion of confirmation (alongside "converted or dismissed") as an event that terminates the fee obligation.

This single issue is a question of law which we review de novo. *See 255 Park Plaza Assocs. Ltd. Partnership v. Connecticut Gen. Life Ins. Co. (*In re *255 Park Plaza Assocs. Ltd. Partnership)*, 100 F.3d 1214, 1216 (6th Cir. 1996). "In all cases of statutory construction, the starting point is the language employed by Congress." *Appleton v. First Nat'l Bank of Ohio*, 62 F.3d 791, 801 (6th Cir. 1995). Where "the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 241 (1989) (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)). When, however, a statutory term is ambiguous, "it is our duty to examine the legislative history in order to render an interpretation that gives effect to Congress's intent." *See United States v. Markwood*, 48 F.3d 969, 975 n.7 (6th Cir. 1995).

Somewhat remarkably, Congress has failed to define "disbursements" anywhere in either the bankruptcy code or its legislative history, although, as a general matter, the word is commonly understood in this context to apply to payments made with the funds generated from the liquidation of the debtor's assets. *See, e.g.*, *St. Angelo v. Victoria Farms, Inc.*, 38 F.3d 1525, 1534 (9th Cir. 1994). Both Robiner and Danny's Markets acknowledge that, prior to confirmation, it is the bankrupt's estate that is making these payments, and that, once a reorganization plan is confirmed, the bankruptcy estate, as a legal matter, disappears. Their instant dispute hinges on the significance of this event, and, specifically, on whether it might alter "disbursements" for purposes of the trustee fee. We agree that the post-confirmation meaning of "disbursement" is indeed ambiguous, and thus have turned to the legislative history that we do have for illumination of the subject.

We are unable to escape the conclusion that, in passing the 1996 amendment, Congress contemplated that disbursements will encompass all payments to third parties directly attributable to the existence of the bankruptcy proceeding, and that, throughout the proceeding, these payments' essential character will not change. In other words, the technical source of the payments, be it estate or debtor, is apparently inconsequential. Accordingly, all of these payments, including the debtor's day-to-day, post-confirmation operating expenses, must be accounted for in the calculation of the trustee's quarterly fee. They are all "disbursements" under the statute, and the statute is quite unambiguous that all disbursements, whenever made, drive the fee amount.

In this analysis, we find most compelling Congress's expression that, under the 1996 amendment, confirmation would not impact the stream of fees coming to the trustee, *see* H.R. CONF. REP. NO. 104-378, 104th Cong., 1st Sess. (1995) (emphasis added):

> [T]he conferees agree to include an extension of post-confirmation quarterly fee payments made under Chapter 11 as proposed in both the House and Senate bills and expect that *these fees will apply to all pending Chapter 11 cases with confirmed reorganization plans*.