**In re Nancy L. HUFF, Debtor.**

**No. 7–98–04067.**

United States Bankruptcy Court,
W.D. Virginia,
Roanoke Division.

Nov. 14, 2001.

---

650

Donald W. Huffman, Roanoke, VA, for Debtor.

Margaret Garber, Roanoke, VA, United States Trustee.

## DECISION AND ORDER

ROSS W. KRUMM, Chief Judge.

The court has before it an objection by the United States Trustee (hereinafter UST) to an application by Nancy L. Huff (hereinafter Debtor) for a final decree in her Chapter 11 case. Title 28 U.S.C. § 1930(a)(6), as amended in 1996, directs a Chapter 11 debtor to pay quarterly fees to the UST until the Chapter 11 case is converted, dismissed, or closed. The fees owed to the UST are calculated based upon the amount of "disbursements" made by the debtor. The issue here is whether a transaction to refinance an existing debt, which is retired with proceeds from the new loan, is a disbursement within the meaning of 28 U.S.C. § 1930(a)(6). The court concludes that Congress intended to include in the calculation of UST fees all payments made by a Chapter 11 debtor, from whatever source and to whomever paid. Therefore, for the reasons that follow the United States Trustee's objection is sustained.

### Background

Debtor filed a voluntary Chapter 11 petition on October 27, 1998 and obtained a confirmed plan on March 13, 2001. Thereafter, on August 17, 2001, Debtor submitted a final report and applied for a final decree. The UST for the Western District of Virginia objected to Debtor's application for a final decree on the grounds that Debtor had not paid all of the required quarterly fees incurred during 2001. The amount due for the first quarter of 2001 is in dispute. Debtor paid the amount due based upon her position that the payments made in connection with the loan refinance were not disbursements to be included in the computation of quarterly fees due the UST.

On September 17, 2001, a hearing was held on an application for a final decree, at which time the Trustee argued that when the Debtor retired an existing debt from funds obtained through a new loan, a disbursement occurred under 28 U.S.C. § 1930(a)(6) since money was paid out or expended by the Debtor or on behalf of the Debtor. The Debtor argued that a disbursement should not be found because the refinance transaction did not result in any benefit to the estate. She argues that one loan was merely replaced with another loan. Moreover, the Debtor contends that, financially speaking, she was worse off after the refinance because the interest rate on the replacement loan was higher than the original loan.[1]

1. Apparently, the Debtor opted for this refinance loan, despite its higher interest rate, so she could put an end to the relationship with her former lender. The UST pointed out, at

## Rulings of Law

■ 28 U.S.C. § 1930(a)(6) sets forth a graduated scale whereby quarterly fees are paid to the UST based on the total amount of "disbursements." In pertinent part, § 1930(a)(6) provides:

> In addition to the filing fee paid to the clerk a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) until the case is converted or dismissed, whichever occurs first. The fee shall be $250 for each quarter in which disbursements total less than $15,000; $500 for each quarter in which disbursements total $15,000 or more but less than $150,000 ... The fee shall be payable on the last day of the calendar month following the calendar quarter for which the fee is owed. 28 U.S.C § 1930(a)(6)

Whether quarterly fees are due under 28 U.S.C. § 1930(a)(6) depends on the definition of "disbursements." However, § 1930(a)(6) does not define "disbursements," nor does the legislative history discuss the meaning of the term. *See Walton v. Jamko, Inc. (In re Jamko, Inc.)*, 240 F.3d 1312, 1314 (11th Cir.2001); *In re Ozark Beverage Co., Inc.*, 105 B.R. 510, 512 (Bankr.E.D.Mo.1989) (stating any attempt to find a congressional discussion on the matter would be futile because Congress "provided absolutely no discussion regarding the definition of 'disbursement' "). The crux of this analysis turns on whether the term "disbursements" includes all payments made by a Chapter 11 debtor, including situations where the debtor borrows money to retire an existing debt.

■ The court begins with a plain reading of the text. *See Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979) (recognizing that "[a] fundamental canon of statutory construction is that ... words will be interpreted as taking their ordinary, contemporary meaning"). The definition of "disburse," is "to expend ... pay out." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 644 (1976). The statute does not qualify the term disbursement; accordingly, this court must apply the plain meaning of the term, which seems to sweep broadly enough to cover the refinance transaction here, since money was paid out to retire a debt.

In addition to the fact that a plain reading of the text analysis requires a ruling in favor of the UST's objection, a brief survey of cases addressing § 1930(a)(6) confirms that the term "disbursements" applies as defined, without qualifications or conditions. The Eleventh Circuit stated that UST fees are calculated based upon all disbursements made during the entire Chapter 11 process. *See In re Jamko*, 240 F.3d at 1316. The Ninth Circuit stated that § 1930(a)(6) is unrelated to who makes the disbursement or to whom the disbursement is made. *St. Angelo v. Victoria Farms, Inc.*, 38 F.3d 1525, 1534 (9th Cir.1994). The issue addressed in *St. Angelo* was whether sale proceeds from a Chapter 11 debtor's farm constituted property of the estate despite the fact that the proceeds were paid directly to the secured lenders by the closing agent and not by the debtor directly. The court determined that those proceeds were property of the

---

the very least, obtaining a loan with a more favorable lender may be an intangible benefit obtained by the Debtor. Although the court may not be inclined to give substantial weight to such intangible benefits, the court believes

that an analysis of the beneficial impact of the refinance transaction is not dispositive since its decision does not depend on the presence or absence of a benefit enjoyed by the Debtor.

estate, and held that the proceeds must be included in the disbursements for purposes of the UST fees. *St. Angelo,* 38 F.3d at 1533.

*In re Meyer,* 187 B.R. 650, 653 (Bankr. W.D.Mo.1995) similarly held that "disbursements" includes all payments from the bankruptcy estate. The court held that one-half of the proceeds paid to secured creditors from the sale of property held by the debtor and nondebtor spouse as tenants by the entirety was property of the estate and therefore subject to § 1930(a)(6). The court also rejected the debtor's argument that the use of an escrow agent to distribute the funds to secured creditors took the transaction outside the scope of the statute. Accordingly, disbursements made by escrow agents are subject to the quarterly fee. *In re Meyer,* 187 B.R. at 653. *See also Office of United States Trustee v. Hays Builders, Inc. (In re Hays Builders, Inc.),* 144 B.R. 778, 779–80 (W.D.Tenn.1992) (examining the ordinary and plain meaning of disbursements, "to pay out," and holding that it is broad enough to cover all disbursements, whether made directly by the debtor or by a third party on the debtor's behalf).

In the case of *In re Pars Leasing,* 217 B.R. 218, 219 (Bankr.W.D.Tex.1997), the court defined disbursements to include payments made by third parties on behalf of the debtor. The issue was whether disbursements calculated for UST fees should be limited to those payments actually made by the debtor, or whether the fee calculation should include disbursements made by the carriers on behalf of the debtor. In *Pars Leasing* the debtor's sole source of revenue came from payments it received under vehicle leases it had with various motor freight common carriers for the truck tractors that were owned by the debtor. The carriers deducted certain operating expenses pursu-

ant to the terms of the leases from the payments it made to the debtor. The court held that the ,UST fee was to be calculated on both actual disbursements by the debtor and disbursements made by the common carriers on behalf of the debtor. *Pars Leasing,* 217 B.R. at 221.

The court in *United States Trustee v. Wernerstruck, Inc., (In re Wernerstruck),* 130 B.R. 86, 89 (D.S.D.1991) adopted the rule that disbursements means any payment. The *Wernerstruck* court held that prepayments made by the debtor to the bank on account of a modified settlement agreement were disbursements within the meaning of § 1930(a)(6). The debtor made payments in excess of those required under the contract. The settlement agreement granted the debtor a line of credit that would not to exceed the original outstanding balance on the loan. The prepayments had the effect of allowing the debtor to borrow more money at a later date. The bankruptcy court held that § 1930 did not apply because it viewed the prepayments as deposits from which the debtor could later withdraw. The district court disagreed holding that the prepayments simply reduced the balance of the loan and the accrual of interest; thus, the payments were disbursements.

The court in *In re HSSI, Inc.,* 193 B.R. 851, 854 (N.D.Ill.1996) construed " 'disbursement' to mean—at least—a transfer of money by the debtor in possession where the debtor has some interest in that money." In *HSSI,* the debtor and its twenty-seven wholly owned subsidiaries operated approximately ninety two retail clothing stores in twenty four states. The debtor did not operate the stores, but acquired and consigned the inventory to the retail outlets. The sales revenue flowed from the subsidiaries into local "blocked" bank accounts, and from there into a "concentration" account controlled by the

debtor's secured financier. The Bankruptcy Court for the Northern District of Illinois held that the transfers between bank accounts were intra-corporate and not economic activity, and denied the UST's motion that both the debtor and its subsidiaries should pay fees based on the transfers. The district court remanded the case back to the bankruptcy court for further explanation of the underlying economic arrangement. The district court further rejected the bankruptcy court's "conclusion that the intent of section 1930 was to impose a fee measured by the level of 'real economic activity,'" stating that this position "finds no support in the text of the statute nor in any legislative history." *HSSI,* 193 B.R. at 855. Similarly, the court in *In re Ozark,* held that disbursements means "all expenses of the debtor-in-possession in a given quarter." In reaching this conclusion, the court rejected the debtor's argument that based on principles of fairness, payments for employee wages, taxes, and other operational expenses should be outside the scope of § 1930. The court agreed with the UST that disbursements encompassed all expenses paid, both to creditors within the plan and to those outside of the plan. *In re Ozark,* 105 B.R. at 511–12.

The Congressional purpose underlying the UST fees lends additional support to a broad reading of the term "disbursements." Section 1930 was established by Congress in 1986 to operate as a means to fund the UST program. *See In re Jamko, Inc.,* 240 F.3d at 1315 (discussing legislative purpose of the UST fees). The goal of the "revenue-generating mechanism" was to establish a way for the "users of the bankruptcy system, not the taxpayer" to provide the wherewithal for the UST program to function. *Id.* The quarterly fees are "akin to a user tax." *Id.* It seems clear that Congress is attempting to raise money through the payment of quarterly fees, and there is no indication that these fees are to be reflective of actual supervision or oversight by a particular UST in a specific case. Similarly, there is no indication that the fees should only correspond with dealings of a reorganized debtor that prove beneficial in some respect. This court finds that the statute mandates a fee when a debtor pays out or expends money, until the Chapter 11 case is converted or dismissed, even if the result seems harsh. The Sixth Circuit summed it up well when it said "Congress nevertheless could have—and ... perhaps even should have declined to maximize the potential revenue ... the law might generate, but there is unfortunately no indication of any such benevolence or restraint on its part." *In re Danny's Market's, Inc.,* 266 F.3d 523, 526 (6th Cir.2001). Any change in the scope of § 1930(a)(6) must come through the legislative process.

### Conclusion

The court finds that the definition of disbursement is broad enough to include the refinance transaction here. The prior loan was retired by a payment made by the Debtor or on behalf of the debtor and it was made to a creditor. The fact that a prior loan was replaced by a new loan does not eliminate the application of § 1930(a)(6). Accordingly, it is

### ORDERED:

That the objection of the United States Trustee to the application for a final decree is SUSTAINED and that the Debtor, Nancy L. Huff, be and is hereby directed to pay to the United States Trustee the fees required by 28 U.S.C. § 1930(a)(6) for the refinance transaction completed by the Debtor in 2001.